SULLIVAN, by guardian *ad litem*, Appellant, vs. SCHOOL DISTRICT No. 1 OF THE CITY OF TOMAH, Respondent.

*January 10—February 6, 1923.*

*Schools: Manual training departments: Failure to safeguard machinery: Injury to pupil: Liability: Statutes: Presumption as to abrogation of common-law rule.*

1. A defendant school district which had established and maintained a manual training department in its schools is not liable for injuries sustained by a pupil by reason of its failure to equip certain saws with proper safety devices. While sec. 2394—4, Stats., in defining the term "employer," includes school districts, and secs. 2394—48 and 2394—49 require employers to use safety devices, etc., to protect employees and frequenters, liability upon failure to comply with the statute would ensue, if at all, only to employees or frequenters, and a child attending public school is included in neither class.

2. The doctrine of non-liability of a municipal corporation for the performance of governmental functions has been long recognized and accepted, and the legislature did not, in defining the word "frequenter," intend to abrogate it.

3. Legislation in derogation of the common law should be construed most favorably to the public corporation and not to the claimant for damages.

4. An intent to abrogate or modify the common law is not presumed from the enactment of a statute upon the same subject; it is rather presumed that no change in the common law was intended unless the language employed clearly indicates such an intention.

5. General statutes are not to be construed to include, to its hurt, the sovereign.

6. In order to abrogate the common law the intention of the legislature must be clearly expressed, either in specific language or in such a manner as to leave no reasonable doubt of its object.

APPEAL from an order of the circuit court for Monroe county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a general demurrer to the complaint. The facts will appear in the opinion.

For the appellant there were briefs by *Graham & Moran* of Tomah, and oral argument by *John G. Graham* and *James D. Moran.*

For the respondent there was a brief by *Naylor & McCaul* of Tomah, and oral argument by *W. B. Naylor.*

DOERFLER, J.   The sole question involved herein is whether the defendant school district, which had established and maintained a manual training department in its schools, can be held liable for injuries sustained by a pupil while attending such department, by reason of the failure of the defendant, as is alleged, to perform its statutory duty to equip certain saws with proper safety devices and safeguards.

Plaintiff contends that under secs. 2394—48, 2394—49, and 2394—72, Stats., the aforesaid duties devolved upon the defendant, and that a violation of such duties creates a liability for the injuries sustained by the plaintiff.   It must be conceded that under the common law the defendant in establishing and maintaining this department is performing a purely governmental function, for which it cannot be held liable for damages sustained by a pupil resulting from the negligence of the officers, agents, and employees of the district.   This has been held in an unbroken line of authorities in this state commencing with *Hayes v. Oshkosh,* 33 Wis. 314, to *Srnka v. Joint Dist. No. 3,* 174 Wis. 38, 182 N. W. 325, and the doctrine of non-liability is fortified further by decisions generally in nearly all of the states of the Union.   But plaintiff's counsel contends that the aforesaid sections of the statutes have operated so as to change the common-law doctrine in this state, and he presents a forcible and lucid argument to support his position.

As secs. 2394—48 and 2394—49, Stats., existed prior to 1913, they referred solely to employers of labor and to employees and frequenters.   These statutes were amended by ch. 588 of the Laws of 1913, and by such amendment an

obligation was placed upon every owner of a public building, as well as on every employer, to so construct, repair, and maintain such public building or place of employment as to render such employment and building safe.

In *Juul v. School Dist.* 168 Wis. 111, 169 N. W. 309, where, in accordance with a custom, a pail containing hot water and chemicals to be used in cleaning the floor of the school room was placed by an employee in a passageway before the pupils had left the school building, it was held that such act must be deemed to have been done by the school district in the performance of its governmental duties, and that the district is not liable for an injury to a pupil who, while passing from one school room to another, fell into such pail and sustained injuries. It was also held in that case that the requirement to maintain, construct, and repair referred to the school building itself, and that unless the negligent act be one connected with such duty no liability would ensue.

In *Srnka v. Joint Dist. No. 3,* 174 Wis. 38, 182 N. W. 325, it was held that secs. 2394—48 and 2394—49 did not apply to a building of a school district because a school district was not embraced in the definition of the term "owner" as provided by sub. (13) of sec. 2394—41, Stats.

While it is conceded by plaintiff's counsel that a school district, as is held in the *Srnka Case,* cannot be deemed an owner in accordance with the definition of that term by the statute, it is contended that inasmuch as sub. (1), sec. 2394—4, in defining the term "employer," expressly included the school district, and inasmuch as secs. 2394—48 and 2394—49 require employers to furnish and use safety devices and safeguards, etc., in order to protect employees and frequenters, such sections constitute an express declaration under and pursuant to which a school district can be held liable in damages to a pupil for failure to provide such devices. That liability under the industrial and compensa-

tion acts ensues where a teacher, being an employee, sustains injury by failure of the district to comply with the statutory provisions, there can be no question. But the liability ensues for a failure such as is herein charged, if at all, only to employees and frequenters. Sub. (5), sec. 2394—41, defines the term "frequenters" as including "every person, other than an employee, who may go in or be in a place of employment or public building under circumstances which render him other than a trespasser."

A "frequenter" is defined in 27 Corp. Jur., page 906, as one who frequents or resorts to a place; or one who attends. See, also, *Rex v. LaMothe*, 18 Ontario Law Rep. 310, 318. This definition is in accordance with the commonly accepted meaning of the term. Such definition would embrace not only a licensee but a trespasser. A trespasser being excluded by the statutory definition, confines the meaning of the term "frequenter" to a licensee, a person entering upon the place of employment by the express or implied permission of the employer for purposes other than those connected with the employment; as, for instance, vendors or persons having business or other relations with either the employer or the employees. The protection designed by the statutes for frequenters is not the same as that contemplated for employees. Clearly, a frequenter meddling with an unguarded machine and sustaining injury would not be entitled either to compensation or to damages like an employee. Exposed cog-wheels in close proximity to a passageway used by frequenters may result in liability where injury ensues to a frequenter. The same result would follow from unguarded fly-wheels, pulleys, or belting. While an employee under the same circumstances would be entitled to compensation, in addition thereto he would be entitled to compensation when injured, whether through his negligence or otherwise, in the operation of an unguarded machine. In the instance last mentioned an employee would not be a trespasser, while

a frequenter would become a trespasser while meddling with such mechanism. These facts were in the minds of the legislators when they enacted the statutes for the benefit of employees and frequenters. Persons become employees or frequenters by their own volition, and there is no compulsion for either class of persons to assume their respective positions and attitudes. Under the laws of this state the attendance of pupils in schools is not voluntary but compulsory. They are not permitted as a matter of right to become frequenters in public schools. Pupils are wards of the state, for the purpose of education in the interests of the public, so that they may become useful citizens and so that they may intelligently be able to exercise the rights of citizenship.

The doctrine of nonliability of a municipality for the performance of governmental functions is so deeply rooted in our jurisprudence and has so generally been recognized and accepted for so long a period of time that in effect it has virtually attained the force of a statute, and while such doctrine has been recognized for over a half a century no legislature has attempted to nullify it.

Legislation in derogation of the common law should be strictly construed most favorably to the public corporation and not to the claimant for damages. *Schaefer v. Fond du Lac*, 99 Wis. 333, 74 N. W. 810, 41 L. R. A. 287.

It has also been held by numerous authorities that it is not to be presumed that the legislature intended to abrogate or modify the rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention. 25 Ruling Case Law, p. 1054, § 280. It has also been held that the rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language. *Ryalls v. Mechanics' Mills*, 150

Mass. 190, 22 N. E. 766, 5 L. R. A. 667; *State v. Central Vt. R. Co.* 81 Vt. 459, 71 Atl. 193, 21 L. R. A. N. s. 949.

In connection with what has been said there is also the general rule, adopted both by this court and the supreme court of the United States, that general statutes are not to be construed to include, to its hurt, the sovereign. *Sandberg v. State,* 113 Wis. 578, 589, 89 N. W. 504; *Dollar Savings Bank v. U. S.* 19 Wall. 227, 239; *U. S. v. Verdier,* 164 U. S. 213, 219, 17 Sup. Ct. 42.

In *Milwaukee v. McGregor,* 140 Wis. 35, 121 N. W. 642, it is said:

"The most general words that can be devised . . . affect not the sovereign in the least, if they may tend to restrain or diminish any of his rights and interests."

So that we conclude that the legislature, in defining the term "frequenter," did not intend to abrogate the aforesaid doctrine of immunity, nor was it its intention to make the term "frequenter" applicable to pupils receiving the benefit of a governmental function in a public school. In order to abrogate the common-law doctrine, the intention of the legislature must be clearly expressed either in specific language or in such a manner as to leave no reasonable doubt of its object.

But it is said that sec. 2394—72, passed by the legislature in its session of 1921, shortly after the rendition of the decision in the *Srnka Case,* changes the common-law rule, and that such statute was expressly enacted in order to create a liability in a case like the instant one. Such statute reads as follows:

"No machine, mechanical device, or steam boiler shall be installed or used in this state which does not fully comply with the requirements of the laws of this state enacted for the safety of employees and frequenters in places of employment and public buildings and with the orders of the industrial commission adopted and published in conformity with secs. 2394—41 to 2394—70, inclusive, of the statutes."

.The original bill introduced in the legislature had the following title: "A bill to create section 2394—72 of the statutes relating to the sale and delivery of machines, mechanical devices and steam boilers which do not comply with the requirements of the law of this state, and of the orders of the industrial commission supplementary thereto." In the body of the bill were then contained the necessary provisions to·enact in substance the matters referred to in the title, and, after several amendments were proposed not germane to the issue herein, an amendment was proposed and incorporated in the bill which prohibited the use in this state of mechanical devices, etc., which do not comply with the laws of this state enacted for the safety of employees and frequenters, etc. While in point of time sec. 2394—72 followed closely upon the decision in the *Srnka Case,* there is nothing in the bill itself, or in the history of the legislation as above referred to, that indicates that the legislature had in mind the decision in the *Srnka Case,* or that it intended by this legislation to annul the doctrine of immunity of a municipal corporation for a failure to comply with the provisions of any statutes. . The section last referred to, in so far as it affords new legislation, is directed solely to the installation of mechanical devices, and that portion of the statute which refers to the use of such devices is merely a reiteration and a declaration of the law as it existed prior to the enactment of such statute.

In the *Srnka Case* it was held that "a school building is not one of the public buildings nor is a school district such an owner as come under the provisions of" secs. 2394—48 and 2394—49. Nothing need be added to this subject, but reference is expressly made to the decision in the *Srnka Case.*

What has been heretofore said in this opinion in discussing the term "frequenters" is also applicable to the term as used in sec. 2394—72.

We are referred by plaintiff's counsel to the case of *Redfield v. School Dist.* 48 Wash. 85, 92 Pac. 770, but that decision was rendered under a statute of the state of Washington which expressly provided for a liability against the school district for an injury on account of a violation of the provisions of the act. The legislature of the state of Washington, therefore, in express language, created a liability, and the Washington court in its decision, as is said in *Juul v. School Dist.* 168 Wis. 111, 169 N. W. 309, held that such statute was evidently intended to do away with the general and common-law doctrine of nonliability in the performance of governmental duties. What has heretofore been said with reference to statutes of a general nature and their effect upon the state and the public is also applicable here.

We are also referred to the case of *Herman v. Board of Education*, 234 N. Y. 196, 137 N. E. 24, in which, in a case similar to the one at bar, that court overruled the nonliability doctrine with respect to a school district, and held the district liable where a pupil was injured in connection with the operation of dangerous machinery. We cannot subscribe to the decision in that case without overruling former decisions which have become the settled law of this state and without conflicting with fundamental principles of law recognized by this court and by courts generally in the Union.

Much that has been said by plaintiff's counsel in regard to the logic contained in *Folk v. Milwaukee*, 108 Wis. 359, 363, 364, 84 N. W. 420, is undoubtedly true. The educational system of this state has undergone great changes since that decision was rendered. Manual training is now a constituent part of our system of education, and instruction in that branch involves the use of mechanical devices. But whether or not the doctrine of nonliability of a school district should be changed is a matter which rests with the

wisdom of the legislature, and not with the courts, and until such change is effected by a proper statute we must consider it our duty to adhere to our former decisions and to pronounce in favor of the nonliability doctrine.   The demurrer to the plaintiff's complaint was therefore properly sustained.

*By the Court.*—Order affirmed.