Door County and others, Respondents, vs. Plumbers, Steamfitters, Refrigeration, Petroleum Fitters, & Apprentices of Local No. 298, A. F. L., and another, Appellants.*

*April 9—May 6, 1958.*

* Motion for rehearing denied, without costs, on June 26, 1958.

144

For the appellants there was a brief by *Warne, Duffy, Dewane, Miller & Gerlikowski* of Green Bay, and oral argument by *William J. Duffy* and *Donald D. Miller*.

For the respondents there was a brief and oral argument by *Donald J. Howe* of Sturgeon Bay.

MARTIN, C. J.   It was stipulated that the total cost of the courthouse addition was $450,000, exclusive of the furniture; of that amount, 35 per cent represented labor on the construction; 15 per cent represented material purchased in Wisconsin; and 50 per cent represented material manufactured outside of the state of Wisconsin. It is admitted that no labor dispute existed, as found by the trial court.

Defendants contend that the picketing was for the sole purpose of informing the union men and the public of the nonunion condition. The evidence is practically undisputed that after Zahn entered into his contract, Richard Garot, business representative of Local 298, called on him and asked him to sign a contract with the union "or else there may be a little dispute on the courthouse job." Zahn testified he attempted, apparently unsuccessfully, to sublet his contract, and that the union offered no solution to the work stoppage except that he join.

On cross-examination Garot testified:

"*Q.* It [the picketing] was also to stop work on the job as long as the nonunion plumber contractor was there, wasn't it? *A.* No, sir.

"*Q.* Didn't you know that would be the effect of the picket? *A.* I thought it might be but I didn't know. That's something nobody knows, I guess. . . .

"The Court: When you testified before you said that it has been your experience that when a picket went on a job that the union men would stop work? *A.* That's right."

The trial court found that the picketing was coercive action in itself and amounted to economic pressure and was designed to cause a work stoppage; that it was not confined to advertising the cause of the union.

In *Vogt, Inc., v. International Brotherhood* (on reargument, 1956), 270 Wis. 321a, 74 N. W. (2d) 749, this court held that the "peaceful picketing" carried on by the union at the entrance to Vogt's gravel pit was for the purpose of coercing the employer to interfere with its employees in their right to join or refuse to join the union, contrary to the provisions of sec. 111.06 (2) (b), Stats., and affirmed the granting of the injunction. On appeal (354 U. S. 284, 77 Sup. Ct. 1166, 1 L. Ed. (2d) 1347) the United States supreme court traced the history of the cases in which it had been required to consider the limits imposed by the Fourteenth amendment on the power of a state to enjoin picketing. In the course of that discussion the court, by Mr. Justice FRANKFURTER, stated at page 289:

"Cases reached the court in which a state had designed a remedy to meet a specific situation or to accomplish a particular social policy. These cases made manifest that picketing, even though 'peaceful,' involved more than just communication of ideas and could not be immune from all state regulation. 'Picketing by an organized group is more than free speech, since it involves patrol of a particular

locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' "

It stated that as time went on its "strong reliance on the particular facts in each case demonstrated a growing awareness that these cases involved not so much questions of free speech as review of the balance struck by a state between picketing that involved more than 'publicity' and competing interests of state policy;" (p. 290) and that the reassessments of its views "were finally generalized in a series of cases sustaining injunctions against peaceful picketing, even when arising in the course of a labor controversy, when such picketing was counter to valid state policy in a domain open to state regulation." (p. 291.)

"This series of cases, then, established a broad field in which a state, in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at preventing effectuation of that policy." (p. 293.)

And quoted from the opinion of the Maine supreme court in *Pappas v. Stacey* (1955), 151 Me. 36, 42, 116 Atl. (2d) 497, 500, where it was said:

" '. . . there is a steady and exacting pressure upon the employer to interfere with the free choice of the employees in the matter of organization. To say that the picketing is not designed to bring about such action is to forget an obvious purpose of picketing—to cause economic loss to the business during noncompliance by the employees with the request of the union.' " (p. 294.)

Finally, it held that the policy of Wisconsin enforced by the prohibition of the Vogt picketing is a valid one.

See also *Retail Fruit & Vegetable Clerks Union v. National L. R. Board* (9th Cir. 1957), 249 Fed. (2d) 591.

It was a fair inference for the trial court to conclude from the evidence in this case that the picketing was for the purpose of coercing the employer to put pressure on the employees to join the union, in violation of sec. 111.06 (2) (b), Stats.

Defendants attempt to distinguish the *Vogt Case* on the ground that there the picketing was on a country road patronized by only a small part of the public whereas in this case it took place in a city where the traffic by comparison is heavy. The fact that the picketing here would have more "advertising" value than it did in the *Vogt Case* does not require the conclusion that it was not meant as coercion of the employer. Under the circumstances the inference to be drawn was for the trial court; it properly concluded that the purpose was illegal.

The second question raised on appeal is whether, under the circumstances of this case, the state has jurisdiction. Appellants contend that interstate commerce is affected because 50 per cent of the cost of the construction is for materials manufactured outside of the state, and that the National Labor Relations Act has pre-empted the field.

What we have here is the county of Door, an arm of the sovereign state of Wisconsin, entering into a contract for the construction of a building which is necessary and essential to the performance of its functions, a place where it can discharge its governmental responsibilities and enforce laws, civil and criminal. It is significant that the National Labor Relations Act defines the term "employer" as follows:

"The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include . . . any state or political subdivision thereof, . . . or any person subject to the Railway Labor Act, . . ." 29 USCA, sec. 152 (2).

The act further provides:

"The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers." 29 USCA, sec. 152 (1).

From this it is evident that the state or any of its political subdivisions is not included within the purview of the National Act.

In *Teamsters Union v. New York, N. H. & H. R. Co.* (1956), 350 U. S. 155, 160, 76 Sup. Ct. 227, 100 L. Ed. 166 (the so-called "piggy-back" case), the United States supreme court said:

"The N. L. R. B. is empowered to issue complaints whenever 'it is charged' that any person subject to the act is engaged in any proscribed unfair labor practice. Sec 10 (b). Under the board's rules and regulations such a charge may be filed by 'any person.' We think it clear that congress, in excluding 'any person subject to the Railway Labor Act' from the statutory definition of 'employer,' carved out of the Labor Management Relations Act the railroads' employer-employee relationships which were, and are, governed by the Railway Labor Act. But we do not think that by so doing congress intended to divest the N. L. R. B. of jurisdiction over controversies otherwise within its competence solely because a railroad is the complaining party. Furthermore, since railroads are not excluded from the act's definition of 'person,' they are entitled to board protection from the kind of unfair labor practice proscribed by sec. 8 (b) (4) (A)."

The implication is that in the case of a political subdivision of a state, which is neither an "employer" nor a "person" under the act, the N. L. R. B. has no jurisdiction.

Appellants rely on *Weber v. Anheuser-Busch* (1955), 348 U. S. 468, 75 Sup. Ct. 480, 99 L. Ed. 546, but in that case a strike was the basis of the conduct complained of and it is not applicable here. In *McCarroll v. Los Angeles County*

*Dist. Council of Carpenters* (Cal. 1957), 315 Pac. (2d) 322, 323 (certiorari denied, March, 1958, 355 U. S. 932, 78 Sup. Ct. 413, 2 L. Ed. (2d) 414), it was held that (syl. 7):

"It is only strikes used as a weapon in bargaining process that are unfair labor practices within exclusive jurisdiction of National Labor Relations Board."

We are not unmindful of the fact that two of the plaintiffs, Zahn and Oudenhoven, are "employers" under the National Act. However, it is not reasonable to assume that congress, in enacting the act, intended in any way to interfere with the governmental function of a sovereign state or its municipalities. This is evident from the distinction made in the "piggy-back" case and from the fact that congress expressly excluded states and their political subdivisions from its definition of "employer" and did not include them in its definition of "person."

Counsel *amicus curiae* have called our attention to the recent decision in *National L. R. Board v. Electrical Workers Local 313* (CCH 1958), 34 Labor Cases, par. 71,447, in which the circuit court of appeals for the Third circuit on April 17, 1958, affirmed a decision of the N. L. R. B. in which it found that a county was a "person" within the purview of the National Act and entitled to protection from the activities proscribed by sec. 8 (a) (4) (A), 29 USCA, sec. 158 (b) (4) (A), (B). The court said in its opinion:

"A governmental subdivision has no rights of its own; it is only an arm for carrying out the interest of the general public. If some individual or group of individuals has indulged in what the congress has termed to be an unfair labor practice by which such entity is harmed we see no objection to the public interest being served by stopping the practice although not otherwise subjecting the municipal subdivision to the statutory obligations of an 'employer.' In other words, the majority of the labor board took the point of view consistent with recognized public policy.

"The point is not sun clear. There is no established authority on which to proceed; the answer depends first, upon the question whether the board has been right before and, second, on the question of whether the 'piggy-back' case gives authority for the position the board now takes. We think it does.

"The order of the board will be enforced."

We are in disagreement with this holding. It has long been held in this state:

"This raises for consideration the question whether a statute of general application containing no specific provision to the effect that the state is within it, applies to the state itself. It is universally held, both in this country and in England, that such statutes do not apply to the state unless the state is explicitly included by appropriate language." *State ex rel. Martin v. Reis* (1939), 230 Wis. 683, 687, 284 N. W. 580. See also *Milwaukee v. McGregor* (1909), 140 Wis. 35, 121 N. W. 642; *State v. Milwaukee* (1911), 145 Wis. 131, 129 N. W. 1101; *Sullivan v. School Dist.* (1923), 179 Wis. 502, 191 N. W. 1020; *Fulton v. State Annuity and Inv. Board* (1931), 204 Wis. 355, 236 N. W. 120.

In 82 C. J. S., Statutes, p. 554, sec. 317, the rule is stated as follows:

"Neither the government, whether federal or state, nor its agencies are considered to be within the purview of a statute unless an intention to include them is clearly manifested; and the rule applies, or applies especially, to statutes which would impair or divest the rights, titles, or interests of the government.

"The government, whether federal or state, and its agencies are not ordinarily to be considered as within the purview of a statute, however general and comprehensive the language of act may be, unless intention to include them is clearly manifest, as where they are expressly named therein, or included by necessary implication."

In 50 Am. Jur., Statutes, p. 199, sec. 222:

"In the process of construing federal statutes, the general rule is that established rules for the construction of statutes prevail. However, it is a general principle to favor such construction of federal statutes as would give them a uniform application throughout the nation. Moreover, in ascertaining the scope of congressional legislation, a due regard for a proper adjustment of the local and national interests in the federal scheme must always be in the background. Federal legislation cannot be construed without regard to the implications of the dual system of government in the United States. The courts should exercise great wariness in the construction of a statute where the problem of construction implicates a phase of federalism and involves striking a balance between national and state authority in a sensitive area of government." See cases there cited.

In *Palmer v. Massachusetts* (1939), 308 U. S. 79, 83, 60 Sup. Ct. 34, 84 L. Ed. 93, in an opinion by Mr. Justice FRANKFURTER, the United States supreme court said:

"Plainly enough the district court had no power to deal with a matter in the keeping of state authorities unless congress gave it. And so we have one of those problems in the reading of a statute wherein meaning is sought to be derived not from specific language but by fashioning a mosaic of significance out of the innuendoes of disjointed bits of a statute. At best this is subtle business, calling for great wariness lest what professes to be mere rendering becomes creation and attempted interpretation of legislation becomes legislation itself. Especially is wariness enjoined when the problem of construction implicates one of the recurring phases of our federalism and involves striking a balance between national and state authority in one of the most sensitive areas of government."

And in *Federal Trade Comm. v. Bunte Bros.* (1941), 312 U. S. 349, 351, 61 Sup. Ct. 580, 85 L. Ed. 881, in another opinion by Mr. Justice FRANKFURTER:

"To be sure, the construction of every such statute presents a unique problem in which words derive vitality from the aim and nature of the specific legislation. But bearing in mind that in ascertaining the scope of congressional legislation a due regard for a proper adjustment of the local and national interests in our federal scheme must always be in the background, we ought not to find in sec. 5 radiations beyond the obvious meaning of language unless otherwise the purpose of the act would be defeated. *Minnesota Rate Cases,* 230 U. S. 352, 398–412."

*By the Court.*—Judgment affirmed.

HALLOWS, J., took no part.

CURRIE, J. (*concurring*). There would seem to be no question but that, if it were not for Door county being a party plaintiff, there would be federal pre-emption here, and state action would be precluded under *Wisconsin E. R. Board v. Chauffeurs, etc., Local 200* (1954), 267 Wis. 356, 366, 66 N. W. (2d) 318. This is because, as pointed out in such case, secs. 158 (a) (3) and 158 (b) (2), 29 USCA, comprising part of the Taft-Hartley amendments to the National Labor Relations Act, make illegal the same type of union activities, where interstate commerce is involved, as does sec. 111.06 (2) (b), Wis. Stats.

The majority opinion grounds its holding, that there is no federal pre-emption, upon the fact that Door county is not a "person" within the definition of such term as used in the National Labor Relations Act. Such definition is to be found in sec. 152 (1), 29 USCA.[1] The statute material to the present controversy is sec. 160 (b), 29 USCA, which covers the issuance of a complaint by the National Labor

---

[1] "The term 'person' includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."

Relations Board charging an unfair labor practice after charges have been filed with such board and an investigation has been made thereof. While the word "person" is employed by such section in describing against whom a complaint is to be issued, such word is not used to describe or limit who may file a charge which may result in the issuance of a complaint.

There is nothing in the National Labor Relations Act which would have precluded Door county from filing a charge against the instant defendants with the National Labor Relations Board. This is pointed out in the dissent filed by Mr. Justice FAIRCHILD. Therefore, it cannot be held that congress has failed to pre-empt the field because the definition of the word "person" in the National Labor Relations Act does not embrace a state, or an instrumentality thereof such as a county.

However, there is another basis upon which the judgment below may be sustained. A county is an arm or agency of the state and in the erection of a courthouse, or addition thereto, it is engaged in a governmental function. *Green County v. Monroe* (1958), 3 Wis. (2d) 196, 87 N. W. (2d) 827. Under our federal system of government it is implied in the United States constitution that the national government, in the exercise of its powers, may not prevent the state, or an agency thereof, from discharging its ordinary functions of government. Mr. Justice BREWER, in *South Carolina v. United States* (1905), 199 U. S. 437, 451, 26 Sup. Ct. 110, 50 L. Ed. 261, stated this principle with a clarity of language that would be most difficult to improve upon:

"Among those matters which are implied, though not expressed, is that the nation may not, in the exercise of its powers, prevent a state from discharging the ordinary functions of government, just as it follows from the second clause of article VI of the constitution, that no state can interfere with the free and unembarrassed exercise by the national government of all the powers conferred upon it."

The serious delay, which the plaintiff county experienced in the building of the addition to its courthouse by reason of the unlawful acts of the defendants, tended to interfere with the performance of its governmental functions. While congress may pre-empt the field of labor relations as they may affect interstate commerce, the courts of the state under the principle of *South Carolina v. United States, supra,* can protect the governmental functioning of the state, or one of its agencies, against acts which unlawfully interfere therewith. Both federal and state statutes make the defendants' activities illegal under the findings of fact of the trial court. We would have an entirely different problem if congress had legislated that all peaceful picketing of an employer, who is engaged in a business affecting interstate commerce, is a valid activity not subject to being enjoined by any court.

The trial court, in addition to finding the activities of the defendants illegal under sec. 111.06 (2) (b), Wis. Stats., also found that the same violated sec. 103.535 because no "labor dispute" existed under the definition of such term set forth in sec. 103.535. Sec. 103.535 is clearly unconstitutional and void under *American Federation of Labor v. Swing* (1941), 312 U. S. 321, 61 Sup. Ct. 568, 85 L. Ed. 855, and *Waukesha v. Plumbers & Gas Fitters Local* (1955), 270 Wis. 322, 71 N. W. (2d) 416. See also *Milwaukee Boston Store Co. v. American Federation of H. W.* (1955), 269 Wis. 338, 356, 357, 69 N. W. (2d) 762. However, the finding of a violation of sec. 111.06 (2) (b) is sufficient to sustain the judgment below.

For the reasons stated herein I concur in the result.

FAIRCHILD, J. (*dissenting*). In my opinion the circuit court lacked jurisdiction to enjoin the conduct of appellant union and the judgment ought to be reversed. The peaceful, orderly, one-man, truthful picketing was entirely lawful unless motivated, as found by the court, to halt construction "to

attempt to coerce the plaintiff Arnold G. Zahn to force his employees to organize into a union shop, or in the alternative, to force . . . Zahn to release his contract with the plaintiff county of Door."

The union's conduct affected interstate commerce. This appears from the stipulated fact that material valued at $225,000, manufactured outside Wisconsin, was to be used. The issue of whether the union's conduct was so motivated as to be wrongful was within the exclusive jurisdiction of the National Labor Relations Board. *Wisconsin E. R. Board v. Chauffeurs, etc., Local 200* (1954), 267 Wis. 356, 366, 66 N. W. (2d) 318. Congress has pre-empted the field as to conduct with which the National Act expressly deals. *Guss v. Utah L. R. Board* (1957), 353 U. S. 1, 9, 77 Sup. Ct. 598, 1 L. Ed. (2d) 601.

The majority opinion appears to be based upon the proposition that conduct which would be an unfair labor practice under the Federal Act can be enjoined by a state court if an arm of the state seeks that relief because of damage to its interests. I respectfully conclude that this view is in error in two respects:

(1) It is based upon an assumption that the county is disqualified, under the National Act, from arousing the jurisdiction of the national board by filing a charge. Whence does this disqualification arise? It is not from the statute itself, but from a regulation adopted by the national board which provides that a charge may be filed by "any person." Concededly the National Act defines "person" in a way that does not expressly include an arm of a state. Nevertheless the only *statutory* prerequisite to issuance of a complaint by the board is that an unfair labor practice be "charged."

(2) The majority reasons that if a county cannot file a charge with the national board, conduct which would be an unfair labor practice affecting interstate commerce may be dealt with by a state court upon complaint of the county.

It must be true that the identical conduct is also within the jurisdiction of the national board because Zahn, the employer, and other interested persons, would clearly be qualified to file a charge with the national board. There are issues of fact and law. Opposite and conflicting results could be reached in the two fora. Congress did not intend that result.

The picketing involved in this action is unlawful, if at all, only because it is conduct in the field of labor relations and constitutes an unfair labor practice under the National Act. If mass picketing or violence or overt threats of violence were involved, state action to prevent those things would appear to be proper. *United Automobile Workers v. Wisconsin E. R. Board* (1956), 351 U. S. 266, 274, 76 Sup. Ct. 794, 100 L. Ed. 1162. But with violence absent, and an effect upon interstate commerce present, then the matter is wholly in the field which is now held to be pre-empted by congress, and intrusted exclusively to the jurisdiction of the national board.