WISCONSIN VETERANS HOME, an agency of the Wisconsin Department of Veterans Affairs, Petitioner-Appellant,

v.

DIVISION OF NURSING HOME FORFEITURE APPEALS, Respondent.†

Court of Appeals

*No. 80–1752. Argued April 30, 1981.—Decided August 25, 1981.*
(Also reported in 310 N.W.2d 646.)

† Petition to review granted. ABRAHAMSON, J., took no part.

For the petitioner-appellant there were briefs by *Bronson C. La Follette*, attorney general, and *Roy G. Mita*, assistant attorney general, and oral argument by *Roy G. Mita*, assistant attorney general.

For the respondent there was a brief by *Brady C. Williamson* and *Teresa M. Elguezabal* and *La Follette, Sinykin, Anderson & Munson* of Madison, and oral argument by *Teresa Elguezabal.*

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. The State of Wisconsin seeks judicial review of a forfeiture which it imposed on itself for having an insufficient number of activities therapists at its veterans home at King. To litigate this matter against itself, the state hired a private law firm to defend the imposition of the forfeiture and required the attorney general to oppose it. We hold that the statute under which the forfeiture was imposed does not apply to the state, and therefore reverse the circuit court's order affirming its imposition.

The Department of Veterans Affairs (DVA) operates the Wisconsin Veterans Home (home). Sec. 45.365, Stats. The parties agree that the home falls within the definition of a nursing home in sec. 50.01(3), Stats. Nursing homes in Wisconsin are licensed and regulated by the Department of Health and Social Services (DH&SS). Sec. 50.02. The home is licensed pursuant to ch. 50.

In February 1975, DH&SS indicated that the home had failed to comply with a regulation requiring "an equivalent of 2 hours of activity staff time per patient per month." Sec. H 32.24 (1) (a), Wis. Adm. Code. The home was unable to meet the requirement because it had only four fulltime activities therapists. Similar violations were noted in December 1976 and February 1978. An occupational therapy consultant for DH&SS found on the latter occasion that four more activities therapists were needed to correct the deficiency.

Neither the home nor DVA have authority to create the new employee positions found necessary by DH&SS. The home asked the legislature for additional staff for that purpose in its budget requests for 1973–75 and 1977–79, but the requests were denied. Temporary therapists were hired under the Comprehensive Employment and Training Act (CETA) from February 1975 through the end of 1977, but the number of CETA employees made available for that purpose was reduced from six to two during that period. A request for six CETA therapy assistants in May 1978 was denied by the state's Department of Administration.

On June 27, 1978, DH&SS served the home with notice of violation for failing to provide sufficient activities staff to meet the requirements of sec. H 32.24 (1) (a), Wis. Adm. Code. Sec. 50.04 (4) (a), Stats. On July 28, 1978, DH&SS assessed a forfeiture against the home pursuant to sec. 50.04 (5) in the amount of $3,900 for the period of June 27 to July 27, 1978. The factors listed in sec. 50.04 (5) (b) [1] were considered by DH&SS in determining the need for and the amount of the forfeiture.

---

[1] Section 50.04 (5) (b), Stats., provides:

(b) In determining whether a forfeiture is to be imposed and in fixing the amount of the forfeiture to be imposed, if any, for a violation, the following factors shall be considered:

1. The gravity of the violation, including the probability that death or serious physical or psychological harm to a resident will

On August 10, 1978, the home asked the legislature's Joint Committee on Finance to authorize it to hire four more activities therapists. That request was denied.

The home then appealed the forfeiture assessment to DH&SS's Division of Nursing Home Forfeiture Appeals (division). A hearing was held November 13, 1978. The division agreed with DH&SS that the home could have taken other action, primarily involving the redeployment or reallocation of personnel to fill the needed positions, to meet the requirements of sec. H 32.24(1)(a), Wis. Adm. Code. The division accordingly affirmed the imposition of the forfeiture.

The home petitioned the circuit court for review of the division's decision. The court affirmed the division. The home appeals from the circuit court's judgment.

The home raises two issues on appeal:

1. Is the home subject to the forfeiture provisions of sec. 50.04(5), Stats?

2. Are the DH&SS findings which led to imposition of the forfeiture sustained by the evidence?

Because we hold that a forfeiture cannot be assessed against the home, we do not reach the second question.

The division contends that ch. 50, Stats., governing the licensing and regulation of nursing homes by DH&SS, applies in its entirety to the home. The home agrees that the licensing and regulatory aspects of ch. 50 apply

result or has resulted; the severity of the actual or potential harm; and the extent to which the provisions of the applicable statutes or regulations were violated.

2. "Good faith" exercised by the licensee. Indications of good faith include, but are not limited to, awareness of the applicable statutes and regulation and reasonable diligence in complying with such requirements, prior accomplishments manifesting the licensee's desire to comply with the requirements, efforts to correct and any other mitigating factors in favor of the licensee.

3. Any previous violations committed by the licensee.

4. The financial benefit to the nursing home of committing or continuing the violation.

to it, but argues that the forfeiture provisions do not.

In support of its contention, the home cites a rule of statutory construction which is most clearly articulated in 3 Sands, *Statutes and Statutory Construction* sec. 62.-01 at 63 (4th ed. 1974):

Statutory provisions which are written in such general language as to make them reasonably susceptible to being construed as applicable alike both to the government and to private parties are subject to a presumptive rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances.

This rule has long been followed in Wisconsin. *See, e.g., State ex rel. Dept. of Pub. Instruction v. ILHR,* 68 Wis. 2d 677, 680–81, 229 N.W.2d 591, 593–94 (1975); *Door County v. Plumbers Local No. 298,* 4 Wis. 2d 142, 150, 89 N.W.2d 920, 924 (1958), *revd on other grounds,* 359 U.S. 354 (1959); *State ex rel. Martin v. Reis,* 230 Wis. 683, 687, 284 N.W. 580, 582 (1939).

The division contends that this rule applies only when it is necessary to construe an ambiguous statute. It argues that ch. 50, Stats., unambiguously applies to the state because of the broad definition of nursing home found in sec. 50.01(3). That definition provides that "nursing home" means:

(a) A place which provides 24-hour services including board and room to 3 or more unrelated residents who because of their mental or physical condition require nursing care or personal care in excess of 7 hours a week, unless the facility has been designated as a community-based residential facility under sub. (1).

If the state were included in this definition by plain language, resort to a rule of statutory construction would indeed be unnecessary. 3 Sands, *supra,* sec. 62.02 at 72. The definition is, however, written in general language

that could apply to both the state and to private parties. It does not specifically include state-run nursing homes within its ambit. Resort to the rule of strict construction against including the state within the statute's reach is therefore appropriate. Neither Sands' treatise nor the Wisconsin cases applying this rule require any further finding of ambiguity before reliance on the rule is proper.

Because the home concedes that it is subject to the licensing and regulatory aspects of ch. 50, Stats., we need not address that issue further. The question becomes whether the home is subject to the forfeiture provisions of ch. 50. We conclude that that was not the legislature's intent.

There is good reason to apply the rule of strict construction with regard to the forfeiture provisions of ch. 50, Stats. That rule of construction is given its strongest force when the state would be included in a law "to its hurt"; that is, when the law would "tend to restrain or diminish any of [the state's] rights and interests." *Necedah Mfg. Corp. v. Juneau County*, 206 Wis. 316, 322, 237 N.W. 277, 279 (1932). *See also Plumbers Local No. 298*, 4 Wis. 2d at 150, 89 N.W.2d at 924. The home, and thus the state, is hurt when it is required to forfeit money which it had allocated to other purposes. Forfeitures are a reasonable way of assuring that private nursing homes will comply with the law. The forfeitures reduce the profitability of a private enterprise, providing an incentive to abide by the law. The home, however, makes no profit, and is dependent upon the legislature for whatever funds it receives. Any forfeiture it pays comes not from profits, but from monies that would have been spent elsewhere in the home's attempt to provide services.

The home's situation is similar to the situation discussed in 30 Op. Att'y Gen. 69 (1941), where the question was whether a judgment against a town was collectible

under a particular *quasi*-garnishment statute.[2] The opinion recognized the general rule that "a statute of general application, no matter how inclusive its terms, will not be construed to apply to the government or its agencies if such construction would impair their rights or interests, unless the statute includes them expressly or by necessary implication." 30 Op. Att'y Gen. at 69. The opinion stated that application of the statute to the town would impair its interests.

Construing section 304.21 to include judgments against the government and its agencies would be detrimental not only to the government agencies, but to the public generally. Funds due from the state to a town are frequently allocated for a particular public purpose. To divert them to payment of a judgment would interfere with the exercise of the governmental functions for which they were intended.

30 Op. Att'y Gen. at 69–70. Similarly, applying the forfeiture provision of ch. 50, Stats., against the home would divert public funds from their intended purpose. This is detrimental to the state, in that the home would be forced to operate with a smaller budget than had been allocated to it, or the legislature would have to appropriate more money to pay the forfeiture. In either event, public monies would be diverted to a purpose for which they were not intended, and the state, as well as the taxpaying public which comprises it, would be harmed.

"The purpose of the rule . . . that general statutes are not to be construed to include to its hurt the state, is to

---

[2] Opinions of the Attorney General, though not controlling, are deserving of judicial consideration. *State ex rel. West Allis v. Dieringer*, 275 Wis. 208, 219, 81 N.W.2d 533, 539 (1957). *See also Town of Vernon v. Waukesha County*, 99 Wis. 2d 472, 479, 299 N.W.2d 593, 598 (Ct. App. 1980). The opinion we have considered does not refer to ch. 50, Stats., but does discuss a situation similar to the one involved here. That we use the opinion by analogy may affect its weight, but not its status as authority.

prevent interference with the exercise of authority in the administration of the affairs of state or community." *Fulton v. State Annuity and Inv. Board,* 204 Wis. 355, 361, 236 N.W. 120, 122 (1931). The policy against interfering with the processes of government would be circumvented if a forfeiture were imposed upon the home. Allocation of funds is a most important function of government. The legislative decision as to where those funds are to be spent would be vitally interfered with if the home were subject to DH&SS forfeitures.

Finally, we note the rule of statutory construction that "statutes should not be construed or interpreted to achieve absurd or unreasonable results." *State v. Yellow Freight System, Inc.,* 101 Wis. 2d 142, 153, 303 N.W.2d 834, 839 (1981). A construction of ch. 50, Stats., that would allow the state to impose a forfeiture upon itself, a procedure that would accomplish little more than juggling figures in the state's accounting books, is unreasonable, if not absurd. We are supported in this view by *State ex rel. Martin,* 230 Wis. at 688, 284 N.W. at 582, where the supreme court held that it would be "ridiculous" to apply to the state a law providing for a fine or imprisonment as punishment for its violation. It is equally ridiculous to subject the state to a forfeiture for violating a law, and then spend substantial sums for attorneys fees and judicial costs merely to reallocate items in the state's budget.

We hold that sec. 50.04(5), Stats., does not apply to the home. It is therefore unnecessary to consider the home's constitutional arguments regarding the inapplicability of sec. 50.04(5), Stats., to it. Whether the other forms of relief provided by ch. 50 to prevent or sanction violations are applicable to the home is not an issue raised by the parties, and we therefore do not address it.

*By the Court.*—Reversed and remanded with instructions to dismiss the forfeiture proceeding against appellant.