ROBERT HAASE, Commissioner Office of the Commissioner ofInsurance
The Office of the Commissioner of Insurance (OCI) administers the mandatory Health Insurance Risk-Sharing Plan (HIRSP) under subchapter II of chapter 619, Stats. You request my opinion as to the correctness of the long-standing practice of the HIRSP board of exempting public employer self-insurance plans from the statutory assessment which subsidizes HIRSP's operating costs. I am of the opinion that this is the proper procedure.
Secondly, you ask whether or not the State of Wisconsin's self-insurance program should be assessed. In my opinion, the answer is no, the state's self-insurance program is not subject to the statutory assessment.
Because it is less complicated, I will address your second question first.
HIRSP was created a decade ago as a means to provide health insurance coverage for persons unable to obtain such coverage in the voluntary market. Ch. 313, Laws of 1979. The costs of administering HIRSP are subsidized by an assessment levied on "every insurer." Sec. 619.13(1)(a), Stats. Section 619.10(5) defines "insurer" to mean "any person or association of persons . . . offering or insuring health services on a prepaid basis . . . [and] includes any person providing health services coverage for individuals on a self-insurance basis."
Despite the mandatory tone of section 619.13(1)(a) providing that "[e]very insurer shall participate in the cost of administering the plan . . .," it is irrelevant as to the state because, absent explicitly inclusive language to the contrary, "laws of general application do not apply to the sovereign."State ex rel. Martin v. Reis, *Page 231 230 Wis. 683, 688, 284 N.W. 580 (1939). See also Sehlin v. State,256 Wis. 495, 500, 41 N.W.2d 596 (1950); Konrad v. State, 4 Wis.2d 532,538-39, 91 N.W.2d 203 (1958); Kenosha v. State, 35 Wis.2d 317,323, 151 N.W.2d 36 (1967); 30 Op. Att'y Gen. 69 (1941); and 62 Op. Att'y Gen. 47, 48 (1973). "The purpose of the rule . . . is to prevent interference with the exercise of authority in the administration of the affairs of state or community." Wis. Vet. Home v. Div. Nurs. Forfeit. Appeals,104 Wis.2d 106, 112-13, 310 N.W.2d 646 (Ct.App. 1981). In other words, the sovereign would not knowingly or intentionally pass laws which would inhibit its just and efficient functioning.
This often-reiterated statement of the law was reaffirmed inState ex rel. Dept. of Pub. Instruction v. ILHR, 68 Wis.2d 677,681, 299 N.W.2d 591 (1975). There it was held that Wisconsin's Fair Employment Act, sections 111.31 to 111.37, was not binding on the state as an employer because the state was not expressly included in the statutory definition of "employer." Certain other sections defining "employer" did include the state, leading the court to uphold appellant's contention that the legislative intent must have been to not hold the state to the strictures of the Fair Employment Act. Id. at 682.
Though that statute has since been amended to bring the state within the ambit of the Fair Employment Act's reach, chapter 31, Laws of 1975, the rationale remains sound. Its application to your question is clear. "Insurer" is defined twice in the insurance code; neither the definition found in section600.03(27) (applicable in chapters 600 to 646), nor that in section 619.10(5) (specific to subchapter II of chapter 619) expressly or by necessary implication includes the state. Because of the absence of manifest legislative intent that the law apply to the state, I must conclude that here the state is immune to the reach of the law and should not be assessed by the HIRSP board.
The answer to your first question is less simple, arising, as it does, from a body of complicated, sometimes conflicting, common law. After careful consideration, it is my opinion that counties, cities, towns, villages, school districts and other political subdivisions of the state are public employers for the purposes of the HIRSP assessment. Therefore, congruent with the HIRSP board's current practice, these entities should not be subject to the statutory HIRSP assessment. I base my opinion on deference to agency *Page 232 
practice, what I understand "public employer" to mean in this context and the sovereignty principle already discussed in relation to the state.
As already noted, on the face of the statute all insurers appear to be subject to assessment. However, private employers offering self-insurance health plans have not been assessed since 1981 when the court in General Split Corp. v. Mitchell,523 F. Supp. 427 (E.D. Wis. 1981), held that the federal Employee Retirement Income Security Act (ERISA) preempts state law.
Public employer health service self-insurance plans are exempt from ERISA. Nevertheless, to date the HIRSP board has not been assessing public employers, leading to your inquiry.
You state that from the effective date of chapter 313, Laws of 1979, the practice has been not to include public employers in the statutory assessment. "Long-standing administrative construction of a statute is accorded great weight in the determination of legislative intent because the legislature is presumed to have acquiesced in that construction if it has not amended the statute." Layton School of Art Design v. WERC,82 Wis.2d 324, 340, 262 N.W.2d 218 (1978). The HIRSP board has exempted public employers from the assessment for nearly a decade, and this practice has gone unchallenged. Consequently, I believe the agency's procedure is entitled to great weight.
In addition to finding merit in current board practice, I also am of the opinion that any reasonable construction of the term "public employer" necessarily leads into the sovereignty issue. For the same reasons given in answering your question regarding the state's assessability, I believe public employers should also remain exempt.
"Public employer" is not defined in chapter 619 or anywhere else in the insurance code. "Employer," by contrast, is defined in no less than sixteen places in the statutes, eight of them in chapter 103 above. The definitions vary considerably. The inference to be drawn is that the Legislature said each time precisely what it meant to for that section and, further, that a particular definition cannot be moved freely into another section
That is not to say we are without guidance. Chapter 40 establishes the Public Employe Trust Fund, and common logic, as well as specific wording in that chapter (see, e.g., section40.01(1)), suggest that a public employe is employed by a public employer. Section *Page 233 
40.02(28) defines employer to mean "the state, including each state agency, and any county, city, village, town, school district, other governmental unit or instrumentality of 2 or more units of government now existing or hereafter created within the state."
And though "public employer" is not defined in Black's Law Dictionary 1104 (5th ed. 1979), it defines "public" as "[p]ertaining to a state, nation, or whole community . . . . [b]elonging to the people at large . . . ." A related term, "public entity," is defined as including "a nation, state, county, city and county, city, district, public authority, public agency, or any other political subdivision or public corporation." Black's Law Dictionary 1106 (5th ed. 1979).
Taking all of these definitions together, I am compelled to conclude that "public employer" includes the state and its political subdivisions: counties, cities, towns, villages and districts.
Once defined, there are only two ways that a statute would not apply to a public employer. One, of course, would be by express exclusion. This is clearly not the case here. The other way is if the particular entity is deemed to partake of a portion of the state's sovereignty. It is my opinion that for the purposes of this statute, public employers do share in the state's sovereignty, rendering this general law inapplicable as to them.
As explained earlier, "it is not the policy of a state or sovereignty to place limitations upon the power and means of maintaining its own existence." 72 Am. Jur. 2d States,Territories, and Dependencies § 1 (1974). I am informed that at the time of HIRSP's creation, few public employers were self-insurers but that since then that number has grown considerably. Contributions to the fund by public employers must come from public monies, and
 [w]here the effect of a statute in general terms is to restrict or limit the rights of the state, to affect its interests, or to impose liabilities upon it, the statute is deemed to be inapplicable to the state unless it is named expressly or by necessary implication. And the same rule is applied as to whether stale statutes will be deemed applicable to a political subdivision of a state, such as a municipality.
72 Am. Jur. 2d States, Territories, and Dependencies § 8 (1974) (emphasis supplied). Also, "[t]he subdivisions of a state, including administrative agencies, counties, cities and school districts, against *Page 234 
the claims of individuals, are recognized as branches of the `sovereign,' so that they are not bound by the general language of a statute." 3 Sands, Sutherland Statutory Construction §62.01 (4th ed. 1986). See also Butterworth v. Boyd,12 Cal.2d 140, 82 P.2d 434, 439 (1938); Keeble v. City of Alcoa,204 Tenn. 286, 319 S.W.2d 249, 250 (1958); Green County v. Monroe,3 Wis.2d 196, 202, 87 N.W.2d 827
(1958).
That counties and towns at times share in the state's sovereignty may be easier to see than that incorporated cities and villages do. Counties and towns have both been termed "quasi-municipal corporations," defined as "a public agency created or authorized by the legislature to aid the state in, or take charge of, some public or state work, other than community government, for the general welfare." McQuillin, Municipal Corporation
§ 2.13 (3d ed. 1987). And further, "[a] county in its political and legal aspect is a civil division of the territory of a state and a governmental agency of the state . . . to aid in the administration of governmental affairs and to exercise delegated sovereign powers of the state . . . ." McQuillin,Municipal Corporations § 1.24 (3d ed. 1987).
A city on the other hand is "not strictly an arm of the state government, though it is a creature or agency of the state." McQuillin, Municipal Corporations § 2.31 (3d ed. 1987). Also called municipal corporations, cities nevertheless do have more than a local mission. "The purpose of municipal corporations is, first, to serve the local inhabitants in regulating and promoting community affairs, and second, to serve the inhabitants of the state residing in the locality in common state matters as an agency of the state." McQuillin, Municipal Corporations § 2.08
(3d ed. 1987). So while a municipal corporation is not itself sovereign, Town of Hallie v. City of Chippewa Falls,105 Wis.2d 533, 538, 314 N.W.2d 321 (1982), as a political subdivision of the state a city does exercise a portion of the state's sovereignty. McQuillin, Municipal Corporations § 2.08a (3d ed. 1987).
I refer you to a prior opinion from this office involving the application of state laws to a county. 56 Op. Att'y Gen. 225 (1967). That opinion concluded that where a county is engaged in a governmental function as an agent and arm of the state, general statutes granting powers to a city with respect to public buildings do not apply to the state or its agency, a county. Id. at 226. See also Green County v. Monroe, 3 Wis.2d at 202, where the Wisconsin *Page 235 
Supreme Court held that "[t]he general words of the statutes conferring zoning powers on cities cannot be construed to include the state, or in this instance the county. . . ."
Just as a county is "a creature of the state [which] exists in large measure to help handle the state's burdens of political organization and civil administration, " State v. Mutter, 23 Wis.2d 407,412-13, 127 N.W.2d 15, appeal dismissed, 379 U.S. 201
(1964), towns, too, "are political subdivisions and governmental agencies of the state." Milwaukee v. Sewerage Comm., 268 Wis. 342,349, 67 N.W.2d 624 (1954), "[and] a constituent part of the plan of permanent organization of the state government, being a territorial and political subdivision, organized for the convenient exercise of portions of the political power of the state." 87 C.J.S. Towns § 4 (1954).
Though case law discussing a town's immunity from the general laws does not abound, as illustrated by the above definitions, towns, as political and governmental entities, are closely akin to counties. Indeed, they are often linked in juxtaposition to cities and villages and it has been noted that some "fundamental differences" exist between the two pairs. State ex rel. Bare v.Schinz, 194 Wis. 397, 402, 216 N.W. 509 (1927).
For example, in contrast to the creation of a county or town as a "political subdivision of the state . . . performing primarily the functions of the state locally," id. at 400, cities and villages are "created for the local convenience of the inhabitants," id. at 401, and "to minister to local functions,"id. at 403. Nevertheless, the Wisconsin Supreme Court also was careful to point out that "[g]overnmental functions are exercised by cities and villages as well as by counties and towns . . . . The rule of immunity[1] applies to all where they act in a governmental capacity . . . ." Id. at 406. "A function is governmental when its primary objective is for health, *Page 236 
safety and the public good." Wausau Jt. Venture v. RedevelopmentAuthority, 118 Wis.2d 50, 60, 347 N.W.2d 604 (Ct.App. 1984). And "in the exercise of governmental functions and powers municipal corporations execute the functions and possess the attributes of sovereignty by reason of authority delegated by the legislative department of government." McQuillin, MunicipalCorporations § 10.05 (3d ed. 1979).
I also call your attention to the opinion I rendered to your office relating to insurance coverage of state and municipal employes by the Group Insurance Board (GIB). 76 Op. Att'y Gen. 311 (1987).I said then that "[m]unicipal employers are not `the state.'" 76 Op. Att'y Gen. at 315. I stand by that statement in the context of that question.
There are two differences between that situation and this. First, it was not a sovereignty question. Secondly, the statutory provision at issue there, section 40.03(6)(a)2., specifically mentioned the state but did not say "and its subdivisions" or in any way enumerate them. As noted earlier in this opinion, the Legislature is careful to include or exclude the entities to which it intends to have the statute apply. Thus, I inferred that only the state proper was legislatively intended by the phrase "on behalf of the state."
Clearly, there are distinctions among the various political subdivisions of the state. For the purpose of your question, however, and for determining whether such entities can claim immunity from the statutory assessment mandated by chapter 619, I am satisfied that public employers should remain exempt, in accordance with the current practice of the HIRSP board. I refer specifically to counties, cities, towns, villages and school districts. If you have a question concerning other entities not addressed in this opinion, you may wish to submit a follow-up opinion request.
DJH:ESM
[1] The immunity referred to in Bare v. Schinz is sovereign immunity from liability, a concept not identical to, but intrinsically rooted in the general sovereignty of concern here. The doctrine of governmental immunity to tort liability has been since expressly abrogated as to "all public bodies within the state: The state, counties cities, villages, towns, school districts . . . and any other political subdivisions of the state." Holytz v. Milwaukee, 17 Wis.2d 26, 40, 115 N.W.2d 618
(1962). Immunity to liability for interest owed was similarly abrogated as to "all branches of government" in Milwaukee v.Firemen Relief Asso., 42 Wis.2d 23, 39, 165 N.W.2d 384 (1969). These were both narrow holdings, however, confined to areas of tort and interest liability. Neither holding upset the doctrine of sovereign immunity to other unconsented suits or the underlying concept of sovereignty in general. Furthermore, both cases underscored the commonalities uniting all political subdivisions of a state and, in fact, linked them intimately with the state. *Page 237