*698 ANNETTE KINGSLAND ZIEGLER, J.
¶ 1. This is a review of a published decision of the court of appeals, DOJ v. DWD, 2015 WI App 22, 361 Wis. 2d 196, 861 N.W.2d 789, which affirmed the decision of the Dane County circuit court,[1] which reversed the decision of the Equal Rights Division of the Department of Workforce Development ("DWD"). The Equal Rights Division of the DWD concluded that Joell Schigur ("Schigur") had proven by a preponderance of the evidence that the Department of Justice ("DOJ") violated Wis. Stat. §§ 230.80-89 (2011-12),[2]the subchapter of Wis. Stat. ch. 230 designated "Employee Protection," by taking retaliatory action against her because she lawfully disclosed, or the DOJ believed that she lawfully disclosed, information under § 230.81.
¶ 2. On April 15, 2008, Schigur attended a staff meeting for Bureau Directors of the DOJ's Division of Criminal Investigation ("DCI") at which her superior, Mike Myszewski ("Myszewski"), explained that the DCI would provide Wisconsin's then-Attorney General J. B. Van Hollen with 24-hour security at the 2008 Republican National Convention in Minnesota. A few days later, Schigur sent an e-mail to Myszewski and two other individuals employed by the DOJ in which she stated her concern that use of state resources at the event might violate state law and Office of State Employment Relations ("OSER") regulations. One month later, Schigur was removed from her position as *699 DCI Public Integrity Director and returned to her previous position as Special Agent In-Charge.
¶ 3. This case involves a narrow question of statutory interpretation: we must determine whether Schigur's e-mail communications to Myszewski are entitled to protection under Wis. Stat. §§ 230.80-.89, given that "only certain disclosures made a particular way and regarding a subject matter covered in the statute will qualify for protection." Hutson v. Wis. Pers. Comm'n, 2003 WI 97, ¶ 37, 263 Wis. 2d 612, 665 N.W.2d 212. Simply stated, we examine whether Schigur's opinion alone, as to the lawfulness or appropriateness of government activity is "information" such that it is entitled to protection under §§ 230.80-.89, whether other portions of Schigur's e-mails relating to the proposed security detail constitute "disclosure[s]" of information under Wis. Stat. § 230.81, and whether Schigur's disclosure is protected because the DOJ believed that Schigur had "disclosed information" under the statute.
¶ 4. Schigur makes two specific arguments on review. First, she argues that disclosure of a "belief— namely her opinion regarding the lawfulness or appropriateness of government activity — is disclosure of "information" under Wis. Stat. §§ 230.80-.89, and that the DOJ therefore may not discipline her for sending e-mail communications that disclosed such a belief. Second, Schigur argues that the DOJ believed that Schigur engaged in activity protected under §§ 230.80-.89, and that Schigur is entitled to protection from discipline on that basis as well. In response, the DOJ argues, among other things, that expressing a belief about known information is not "disclosing information" under the statute, and that Schigur for *700 feited her second argument by failing to raise it in the administrative proceeding below.
¶ 5. We conclude that: (1) an opinion alone, as to the lawfulness or appropriateness of government activity is not "information" as that term is defined in Wis. Stat. § 230.80(5); (2) under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained "information" regarding the proposed security detail, the communication of the information to Myszewski, Jed Sperry, and Cindy O'Donnell was not a "disclosure" under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails; and (3) Schigur's argument that the DOJ believed that she "disclosed information" rests on a misinterpretation of § 230.80(8)(c) and therefore fails. Accordingly, we affirm the decision of the court of appeals.
I. FACTUAL BACKGROUND
¶ 6. On May 28, 2006, DCI Administrator Jim Warren ("Warren") promoted Schigur from her position as Special Agent In-Charge within DCI to the position of Director of DCI's Bureau of Public Integrity. Schigur was subject to a two-year probationary period and received probationary performance evaluations every three months. From September 2006 to November 2007, Joell received six positive probationary performance evaluations from Warren.
¶ 7. On January 3, 2008, Myszewski became DCI's Acting Administrator and Schigur's supervisor. On February 22, 2008, Myszewski completed Schigur's seventh probationary performance evaluation. The evaluation was again positive, and recommended that Schigur "be removed from probation and receive permanent status as a director."
*701 ¶ 8. On April 15, 2008, Schigur attended a staff meeting for DCI Bureau Directors. At the meeting, Myszewski informed the attendees that then-Wisconsin Attorney General J. B. Van Hollen would be attending the Republican National Convention in Minnesota. Myszewski explained that DCI would provide the Attorney General with 24-hour security at the event, and that the head of DCI's tactical unit, Jed Sperry ("Sperry"), would plan the security detail.
¶ 9. On April 21, 2008, Schigur sent an e-mail to Myszewski, Sperry, and Cindy O'Donnell ("O'Donnell"), the Administrator of the DOJ's Division of Management Services ("DMS"), which stated in part:
In our April 15th staff meeting, a discussion was held regarding providing the Attorney General with a 24 hour security detail of special agents while he attends the Republican National [Convention] in Minnesota. SAC Jed Sperry was selected as the individual responsible for coordinating this effort. The Office of State Employee Relations in the bulletin numbered OSER-0053-MRS (attached) clarified permissible political activities for state employees. According to Section 6(h), a state employee may participate as a delegate, alternate, or proxy to a political convention provided he or she is off duty and not on state property.
I am concerned that providing state resources to the Attorney General while he participates in a political activity off duty may violate OSER regulations and state law. I am expressing this concern in hopes that this decision will be further evaluated to avoid possible scrutiny of our Attorney General, our agency and our special agents.
Schigur attached to the e-mail OSER bulletin OSER0053-MRS.
*702 ¶ 10. On April 23, 2008, Myszewski e-mailed Schigur. He wrote in part:
I have read both your [e-mail] and the attached OSER bulletin with great interest. Thank you for calling my attention to your concerns about the potential of improper political activity by our agent(s) who will provide security for the Attorney General at the [Republican National Convention] in September. I will forward your concerns up the chain of command so that they can be evaluated.
However, I do not think that an on duty DCI agent who is protecting the Attorney General at a political event, at which certain groups have threatened to violently disrupt, constitutes political activity on the part of an agent.
¶ 11. The same day, Schigur responded with another e-mail message, which read in part:
To clarify, the concern is not regarding agents participating in political activity; rather can state resources be used by the [Attorney General] at a political event where he is not representing DOJ, rather the Republican Party. Parallel issues [came up] in the Jensen/Chvala investigation.
Thanks for looking into this further.
¶ 12. On May 21, 2008, Myszewski and O'Donnell met with Schigur and presented her with her final probationary performance evaluation. The evaluation stated that, during the time since her previous evaluation, Schigur had "been persistently unwilling to carry out administration policies, argumentative, disrespectful, suspicious of management, and insubordinate" as *703 well as "openly critical and defiant of management's policies and decision making."[3]
¶ 13. Effective May 22, 2008, the DOJ removed Schigur from her position as DCI Public Integrity Director and returned her to her previous position as Special Agent In-Charge.
II. PROCEDURAL BACKGROUND
¶ 14. On July 11, 2008, Schigur filed a complaint with the Equal Rights Division of the DWD. The complaint alleged that the DOJ had unlawfully retaliated against her by terminating her probation and demoting her to her previous position for e-mailing Myszewski about Schigur's concerns regarding the proposed security detail at the Republican National Convention. On September 26, 2008, the Equal Rights Division of the DWD issued an "Initial Determination" that there was probable cause to believe that the DOJ violated Wis. Stat. §§ 230.80-.89 by "[t]aking any retaliatory action because the employee lawfully disclosed, or the respondent believed the employee had disclosed, information under sec. 230.81, Stats." The case was certified for an administrative hearing on the merits of Schigur's complaint.
¶ 15. From September 28 to September 30, 2009, a hearing on the DOJ's liability was held before Administrative Law Judge Deborah Little Cohn ("ALJ"). The ALJ stated on the first day of the hearing that:
*704 Ms. Schigur filed a complaint with the Wisconsin Equal Rights Division... alleging that the [DOJ] violated the Wisconsin Whistle Blower Law, Section 230.80-230.89 of the Wisconsin Statutes, by taking retaliatory action because she lawfully disclosed — or the [DOJ] believed that she had disclosed information under Section 230.81 Wis. Stats.
On April 29, 2011, the Equal Rights Division of the DWD issued a "Non-Final Decision and Memorandum Opinion" finding that Schigur had proven by a preponderance of the evidence that the DOJ had violated Wis. Stat. §§ 230.80-.89 by taking retaliatory action against her "because she lawfully disclosed, or the [DOJ] believed that she had lawfully disclosed, information" under § 230.81.
¶ 16. On July 7, 2011, the DOJ filed a motion for reconsideration of the ALJ's non-final decision. In its motion, the DOJ argued for the first time that, among other things, Schigur had not "disclose [d]" "information" under Wis. Stat. §§ 230.81(l)(a) and 230.80(5)(a), respectively. In response, Schigur submitted that the DOJ had no right to ask for reconsideration of a written decision of an Equal Rights Division ALJ. On September 19, 2011, the ALJ denied the DOJ's motion. The ALJ stated that she believed she possessed authority to reconsider her non-final decision, but that the issues raised by the DOJ were "best addressed on appeal."
¶ 17. On October 4, 2011, a remedy hearing was held before the ALJ. On April 4, 2012, the Equal Rights Division of the DWD issued a second "Non-Final Decision and Memorandum Opinion" ordering the DOJ to take certain actions to remedy its violation of Wis. Stat. §§ 230.80-.89.
*705 ¶ 18. On April 30, 2012, the Equal Rights Division of the DWD issued a "Final Decision and Memorandum Opinion." The decision again found that Schigur had proven by a preponderance of the evidence that the DOJ had violated Wis. Stat. §§ 230.80-.89 by taking retaliatory action against her "because she lawfully disclosed, or the [DOJ] believed that she had lawfully disclosed, information" under § 230.81. The decision concluded that "Schigur disclosed 'information' as defined under Wis. Stat. sec. 230.80(5) in her April 21 and 23, 2008 [e-mails] to her supervisor," and that Schigur had proven by a preponderance of the evidence that the "DOJ decided that she failed to pass probation as a Bureau Director and reinstated her to her former position as a Special Agent In-Charge because she disclosed information under Wis. Stat. sec. 230.81." The decision again ordered the DOJ to take certain actions to remedy its violation.
¶ 19. On May 29, 2012, the DOJ filed a petition for judicial review of the April 30, 2012 decision in Dane County circuit court. On May 21, 2013, the circuit court issued a decision and order reversing the decision of the Equal Rights Division of the DWD. The court found that Schigur had not disclosed "information" as that term is defined in Wis. Stat. § 230.80(5), and that Schigur's communications were therefore not entitled to protection under §§ 230.80-.89. On July 2, 2013, Schigur filed a notice of appeal.
¶ 20. On February 5, 2015, the court of appeals affirmed the circuit court's decision. DOJ v. DWD, 2015 WI App 22, ¶ 31, 361 Wis. 2d 196, 861 N.W.2d 789. The court of appeals concluded that "Schigur's statements in the [e-mails] did not disclose 'information,' but rather expressed her opinion that providing security to the Attorney General might be a violation of *706 law." Id., f 30. On March 4, 2015, Schigur filed a petition for review in this court. On June 12, 2015, we granted the petition.
III. STANDARD OF REVIEW
¶ 21. "In an administrative appeal, the scope of our review is identical to that of the circuit court and is set forth in Wis. Stat. § 227.57." Andersen v. DNR, 2011 WI 19, ¶ 24, 332 Wis. 2d 41, 796 N.W.2d 1 (citation omitted). In this case we interpret Wis. Stat. §§ 230.80-.89. "The interpretation of a statute and its application to undisputed facts is a question of law that we review de novo." Id., ¶ 26 (citation omitted). In appropriate cases we accord a level of deference to an agency's interpretation and application of a statute. See, e.g., id., ¶¶ 26-29. However, the ALJ below did not examine any of the statutory questions we answer today. Therefore, there is no decision to which we might defer.
[4 — 6] ¶ 22. "[Statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). Additionally, we interpret statutory language "reasonably, to avoid absurd or unreasonable results." Id., ¶ 46.
*707 IV. ANALYSIS
¶ 23. Wisconsin Stat. ch. 230 governs "State Employment Relations", that is, state government employment relations. See, e.g., Wis. Stat. § 230.01 (Statement of policy). Subchapter III of ch. 230, see Wis. Stat. §§ 230.80-.89, is titled "Employee Protection." We have referred to this statute as "the whistleblower law" because "it includes provisions intended to encourage employees to disclose certain types of information and protect employees from retaliation that might result from such disclosures." Hutson, 263 Wis. 2d 612, ¶ 1 & n.l. Under Wis. Stat. § 230.83, "[n]o appointing authority, agent of an appointing authority or supervisor may initiate or administer, or threaten to initiate or administer, any retaliatory action against an employee." Wis. Stat. § 230.83(1).
¶ 24. Wisconsin Stat. § 230.80(8) defines " [retaliatory action" as:
[A] disciplinary action taken because of any of the following:
(a) The employee lawfully disclosed information under s. 230.81 or filed a complaint under s. 230.85(1).
(b) The employee testified or assisted or will testify or assist in any action or proceeding relating to the lawful disclosure of information under s. 230.81 by another employee.
(c) The appointing authority, agent of an appointing authority or supervisor believes the employee engaged in any activity described in par. (a) or (b).
Wis. Stat. § 230.80(8) (emphases added).
¶ 25. Wisconsin Stat. § 230.81(1) states in part: "An employee with knowledge of information the disclosure of which is not expressly prohibited by state or *708 federal law, rule or regulation may disclose that information to any other person." Wis. Stat. § 230.81(1) (emphases added). However, "to obtain protection under s. 230.83, before disclosing that information to any person" the employee must first "[d]isclose the information in writing" either to the employee's supervisor or to a "governmental unit" selected by the Equal Rights Division of the DWD. Wis. Stat. § 230.81(l)(a)-(b).[4]
¶ 26. "Information" is defined in the statute as:
[IJnformation gained by the employee which the employee reasonably believes demonstrates:
(a) A violation of any state or federal law, rule or regulation.
(b) Mismanagement or abuse of authority in state or local government, a substantial waste of public funds or a danger to public health and safety.
Wis. Stat. § 230.80(5). The words "disclose" and "disclosure" are not defined in the statute.
¶ 27. The DOJ argues that Schigur is not entitled to protection under Wis. Stat. §§ 230.80-.89 for three reasons: (1) Schigur did not "disclose information" under § 230.81; (2) Schigur did not comply with the statutory requirement to disclose the information in writing to her supervisor, Myszewski, before disclosing it to other individuals, namely O'Donnell and Sperry, see § 230.81(l)(a); and (3) Schigur's opinion that the information she disclosed demonstrated a violation of law was not "reasonabl[e]." See § 230.80(5)(a).
*709 ¶ 28. Schigur disputes each of these contentions. In addition, she argues that even if she did not "disclose information" under Wis. Stat. § 230.81, her communication is still entitled to protection because the DOJ believed that she disclosed information under § 230.81. See Wis. Stat. § 230.80(8)(c).
¶ 29. We conclude that an opinion alone, as to the lawfulness or appropriateness of government activity is not "information" as that term is defined in Wis. Stat. § 230.80(5). We further conclude that under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained "information" regarding the proposed security detail, the communication of the information to Myszewski, Sperry, and O'Donnell was not a "disclosure" under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails. These conclusions render it unnecessary to examine the DOJ's other arguments. See, e.g., State v. Subdiaz-Osorio, 2014 WI 87, ¶ 143, 357 Wis. 2d 41, 849 N.W.2d 748 (Ziegler, J., concurring) ("[W]e are generally obliged to decide our cases on the 'narrowest possible grounds.'" (citations omitted)). Finally, we conclude that Schigur's argument that the DOJ believed that she "disclosed information" rests on a misinterpretation of Wis. Stat. § 230.80(8)(c) and therefore fails.
A. Liberal Construction of Wis. Stat. §§ 230.80-.89
¶ 30. Before we begin our textual analysis of Wis. Stat. §§ 230.80-.89, we must address Schigur's contention that we are to construe the statute liberally. Wisconsin Stat. § 230.02, "Liberal construction of statutes," states that "[s]tatutes applicable to the office shall be construed liberally in aid of the purposes *710 declared in s. 230.01." Wis. Stat. § 230.02.[5] Schigur draws our attention to the following purposes set forth in Wis. Stat. § 230.01:
It is the policy of the state to ensure its employees opportunities for satisfying careers and fair treatment based on the value of each employee's services. It is the policy of this state to encourage disclosure of information under subch. Ill ["Employee Protection"] and to ensure that any employee employed by a governmental unit is protected from retaliatory action for disclosing information under subch. III.
Wis. Stat. § 230.01(2).[6] We take such a directive from the legislature seriously. However, none of the purposes cited by Schigur affect today's statutory inquiry.
¶ 31. We will examine the purposes Schigur lists in reverse order. First, "[i]t is the policy of this state to encourage disclosure of information under subch. Ill and to ensure that any employee employed by a governmental unit is protected from retaliatory action for *711 disclosing information under subch. III." Wis. Stat. § 230.01(2) (emphases added). This policy contains the very language we must interpret in this case. We cannot construe the statute liberally in aid of disclosure of information and protection from retaliatory action for disclosure of information until we know what the terms "disclosure of information" and "retaliatory action" mean. In other words, we must first give these specific terms their "common, ordinary, and accepted meaning[s]" or their "special definitional meaning[s]" if definitions are provided. Kalal, 271 Wis. 2d 633, ¶ 45. Only when the content of these words is identified can the rest of the statute be interpreted liberally in aid of disclosure of information and protection from retaliatory action.
¶ 32. The only issue we examine today to which this policy might apply without necessitating circular reasoning is the question of whether the DOJ believed Schigur lawfully disclosed information under Wis. Stat. § 230.81. That issue requires us to interpret Wis. Stat. § 230.80(8)(c). However, "a provision can be construed 'liberally' as opposed to 'strictly' only when there is some ambiguity to construe," Salazar v. Ramah Navajo Chapter, 567 U.S. _, 132 S. Ct. 2181, 2199 (2012) (Roberts, J., dissenting), and as we will demonstrate, § 230.80(8)(c) is not ambiguous.
¶ 33. Second, "[i]t is the policy of the state to ensure its employees opportunities for satisfying careers and fair treatment based on the value of each employee's services." Wis. Stat. § 230.01(2). We are at a loss as to how this policy, amorphous in this context, is supposed to alter our statutory interpretation in this case. Schigur has not provided us with any additional *712 guidance. "[W]e do not usually address undeveloped arguments." State v. Gracia, 2013 WI 15, ¶ 28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87 (citation omitted).
¶ 34. In sum, there may be cases where the "liberal construction" provision affects our analysis of a statute, but this is not one of them. We proceed to address Schigur's arguments.
B. Whether Schigur Lawfully Disclosed "Information" Under Wis. Stat. § 230.81
¶ 35. Under Wis. Stat. § 230.83(1), "retaliatory action [s]" are prohibited. One type of retaliatory action occurs when "a disciplinary action [is] taken because . . . [an] employee lawfully disclosed information under s. 230.81." Wis. Stat. § 230.80(8)(a).
¶ 36. Under Wis. Stat. §230.81(1), "[a]n employee with knowledge of information the disclosure of which is not expressly prohibited by state or federal law, rule or regulation may disclose that information to any other person." Wis. Stat. § 230.81(1) (emphases added). As stated, "information" is defined in the statute as
[Unformation gained by the employee which the employee reasonably believes demonstrates: (a) A violation of any state or federal law, rule or regulation, (b) Mismanagement or abuse of authority in state or local government, a substantial waste of public funds or a danger to public health and safety.
Wis. Stat. § 230.80(5).
¶ 37. The DOJ argues that Schigur did not "disclose information" under Wis. Stat. § 230.81.[7] Schigur's argument in response is that an opinion *713 alone, as to the lawfulness or appropriateness of certain government activity is "information" under Wis. Stat. § 230.80(5). According to this reasoning, when Schigur notified Myszewski, Sperry, and O'Donnell of her concerns about the lawfulness or appropriateness of the security detail that Myszewski had proposed, she was protected from retaliatory action for that communication.
¶ 38. We agree with the conclusion of the court of appeals that Wis. Stat. § 230.81(1) "does not cover employee statements that merely voice opinions or offer criticism." DOJ v. DWD, 361 Wis. 2d 196, ¶ 27 (citation and internal quotation marks omitted). We think the language of the statute clearly mandates this interpretation.
¶ 39. The statute's definition of "information" itself contains the word "information." The statute thus extends protection only to the disclosure of a certain type of information: (1) information gained by the employee; (2) that the employee reasonably believes demonstrates one of the enumerated inappropriate activities. Schigur's opinion regarding the security *714 detail's lawfulness or appropriateness fulfills the second of these factors, but not the first.
¶ 40. Schigur's argument does not comport with the statute's definition of information. If an opinion as to the lawfulness or appropriateness of government activity itself constituted "information gained by [an] employee," then under the statute the employee would have to reasonably believe that the opinion itself demonstrated inappropriate government conduct. But one person's ultimate conclusion that certain conduct is unlawful or inappropriate does not, alone, demonstrate unlawful or inappropriate government conduct. For example, the statement "I believe that it is illegal for the government to censor free speech" does not in and of itself demonstrate that the government has censored free speech; there are no facts alleged in the conclusion that demonstrate that the government has engaged in conduct that constitutes censorship. This is why "information" in this context instead refers to the details of underlying conduct rather than to an opinion alone, as to the lawfulness or appropriateness of that conduct. An employee's opinion — her "reasonable] belief," Wis. Stat. § 230.80(5) — regarding that conduct's unlawfulness or inappropriateness is necessary for the statute's protection to cover disclosure of that conduct, but the conduct itself is the "information" that is disclosed, not the opinion that the conduct is unlawful or inappropriate. Cf. Kinzel v. Bd. of Regents of Univ. of Wis. Sys., No. 2012AP1586, unpublished slip op., ¶ 19 (Wis. Ct. App. Mar. 28, 2013) (examining Wis. Stat. § 230.90, which provides protection from retaliation on the basis of an employee's exercise of her free speech rights, and explaining that that statute "does not cover *715 employee statements that merely voice opinions or offer criticism" (citation omitted)).[8]
¶ 41. We conclude that an opinion alone, as to the lawfulness or appropriateness of government activity is not "information" as that term is defined in Wis. Stat. § 230.80(5).[9]
C. Whether Other Portions of Schigur's E-mails Relating to the Proposed Security Detail are "Disclosure [s]" of Information under Wis. Stat. § 230.81
¶ 42. While Schigur's e-mail contained details regarding the proposed security detail at the Republican National Convention, she does not contend that *716 these facts constitute "information." Schigur's attorney clarified multiple times at oral argument Schigur's view that it was Schigur's opinion alone, as to the lawfulness or appropriateness of government activity that constituted "information" under Wis. Stat. § 230.80(5). For instance, the following exchange occurred between Justice Ziegler and Schigur's attorney:
Justice Ziegler: Can I try to clarify something? ... The "information" isn't the travel with security detail. You're saying the "information" is her legal opinion that doing so is unlawful.
Schigur's attorney: Exactly.
Justice Ziegler: There's a difference. I think people were considering the "information" to be the travel with security, versus, you're saying the "information" is her legal opinion about that conduct being unlawful.
Schigur's attorney: Yeah. Or the "information" is her belief that the use of state resources in this way was unlawful, constituted a violation of OSER.
¶ 43. And in response to a line of questioning posed by Justice Gableman at oral argument, Schigur's attorney declared, "[W]hat [Schigur] disclosed was not the existence of the security detail. What she disclosed was its unlawfulness." Schigur argues to the same effect in her brief: "For the Court of Appeals (and the Circuit Court before it) to declare that an expression of belief is not protected... is wrong."
f 44. Even assuming, without deciding, that other portions of Schigur's e-mail constitute "information" under Wis. Stat. § 230.80(5), we nonetheless conclude that Schigur's communication of this infor *717 mation is not protected under §§ 230.80-.89 because the communication was not a "disclosure" under Wis. Stat. § 230.81.
¶ 45. After attending the staff meeting led by Myszewski, Schigur e-mailed Myszewski, Sperry, and O'Donnell. But as Schigur made clear before the circuit court, "the decision to utilize State agents to provide a security detail to the Attorney General was known to those whom Schigur [e-mailed]." Myszewski in particular is the person who had informed Schigur of the proposed security detail in the first place.
¶ 46. Wisconsin Stat. §§ 230.80-.89 protects "employee disclosure[s]" of information. Wis. Stat. § 230.81; see § 230.80(8); § 230.83. We have held, in another context, that to "disclose" information, "the recipient must have been previously unaware of the information at the time of the communication." State v. Polashek, 2002 WI 74, ¶ 23, 253 Wis. 2d 527, 646 N.W.2d 330. We arrived at our definition of the word "disclose" in Polashek after examining several dictionary definitions of "disclose," as well as the interpretations of that word by multiple federal courts. See id., ¶ 20-22. We stated in that case that "a lack of knowledge on the part of the recipient is inherent in a disclosure." Id., ¶ 21.
¶ 47. "What is of paramount importance is that [the legislature] be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts." Finley v. United States, 490 U.S. 545, 556 (1989), superseded by statute as stated in Exxon Mobil Corp. v. Allapattah Serv., Inc., 125 U.S. 546, 557—58 (2005). Therefore we would require a convincing reason indeed to interpret "disclose" any differently in this context.
*718 ¶ 48. Perhaps Schigur does not seriously pursue an argument that other portions of her e-mail constitute disclosed "information" under the statute because the argument would require this court to adopt a definition of the word "disclose" that would lead to truly absurd results. As discussed, to disclose "information" under Wis. Stat. § 230.81, an employee must disclose "information gained by the employee which the employee reasonably believes demonstrates" enumerated types of unlawful or inappropriate government activity. Wis. Stat. § 230.80(5). The definition of "information" makes clear that the employee need only disclose the details of the underlying conduct. The employee need not disclose her reasonable belief that the information demonstrates unlawful or inappropriate government activity; instead, the employee need only hold that belief. If this court were to conclude that a "disclosure" under § 230.81 does not require a lack of knowledge on the part of the recipient, then an employee who merely repeated a supervisor's statement back to the supervisor, while inwardly believing that the conduct the statement described was unlawful or inappropriate, would thereby become entitled to protection under Wis. Stat. § 230.83 (assuming that the employee otherwise complied with statutory procedures). This pushes the concept of "whistleblowing" a tad too far.
¶ 49. We conclude that, under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained "information" regarding the proposed security detail, the communication of the information to Myszewski, Sperry, and O'Donnell was not a "disclosure" under Wis. Stat. § 230.81 because the information was already known to the recipients of *719 the e-mails. Consequently, those portions of the e-mail are not protected under Wis. Stat. § 230.83.
D. Whether the DOJ Believed Schigur Lawfully Disclosed Information Under Wis. Stat. § 230.81
¶ 50. Another type of retaliatory action prohibited under Wis. Stat. § 230.83 occurs when "a disciplinary action [is] taken because . . . [t]he appointing authority, agent of an appointing authority or supervisor believes the employee engaged in any activity described in par. (a) or (b)." Wis. Stat. § 230.80(8)(c) (emphasis added). The activities referenced in Wis. Stat. § 230.80(8)(a) and (b) are: "(a) The employee lawfully disclosed information under s. 230.81 or filed a complaint under s. 230.85(1)"; and "(b) The employee testified or assisted or will testify or assist in any action or proceeding relating to the lawful disclosure of information under s. 230.81 by another employee."
¶ 51. Schigur argues that the DOJ engaged in retaliatory action against her because it believed she disclosed information under Wis. Stat. § 230.81. The DOJ argues in response that Schigur forfeited the claim "by failing to timely assert it before the administrative agency," and that we cannot review the claim because it presents a question of fact.
¶ 52. Schigur did not argue before the ALJ that the DOJ engaged in retaliatory action under Wis. Stat. § 230.80(8)(c). However, the ALJ stated on the first day of the hearing on the DOJ's liability that:
Ms. Schigur filed a complaint with the Wisconsin Equal Rights Division.. . alleging that the [DOJ] violated the Wisconsin Whistle Blower Law, Section 230.80 — 230.89 of the Wisconsin Statutes, by taking retaliatory action because she lawfully disclosed — or *720 the [DOJ] believed that she had disclosed information under Section 230.81 Wis. Stats.
The ALJ's final decision similarly stated that Schigur had proven by a preponderance of the evidence that the DOJ had violated Wis. Stat. §§ 230.80-.89 by taking retaliatory action against her "because she lawfully disclosed, or the [DOJ] believed that she had lawfully disclosed, information" under Wis. Stat. § 230.81.
¶ 53. Schigur contends that her argument that the DOJ believed she disclosed information was a response to certain of the DOJ's arguments that it raised for the first time in its motion for reconsideration before the ALJ. The ALJ did not reconsider her decision, concluding that the DOJ's new arguments were "best addressed on appeal." Schigur says she raised her Wis. Stat. § 230.80(8)(c) claim at the first possible opportunity: before the circuit court. She reasserted the argument again at the court of appeals, and the issue was one of two that she presented in her petition for review before this court.
¶ 54. The procedural circumstances of this case are somewhat unique. As stated, supra note 7, "[w]hen an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision, this court may exercise its discretion to address" an issue not raised until appeal. Apex Elec. Corp. v. Gee, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). Both parties have briefed the issue.[10] As will be shown, the issue Schigur raises *721 is legal rather than factual under the circumstances of this case. Finally, we granted review of the issue and find it of sufficient public interest to merit a decision. Therefore, assuming Schigur forfeited the issue, a question we do not decide today, we exercise our discretion to review the issue.
¶ 55. In arguing that the DOJ believed Schigur disclosed information, Schigur states, "clearly the DOJ believed that Schigur's disclosures were protected under the statute." In other words, Schigur reads Wis. Stat. § 230.80(8)(c) as defining retaliatory actions to include instances where a supervisor makes a mistake of law as to whether an employee's communication is a "disclosure of information." According to this argument, even if Schigur did not "disclose information" as defined in the statute, she is still protected if the DOJ believed she "disclosed information" as defined in the statute. Schigur misinterprets § 230.80(8)(c). The most reasonable interpretation of the provision is that it is aimed at situations where a supervisor retaliates on the basis of a mistake of fact, such as when a supervisor is told that an employee engaged in conduct that could constitute disclosure of information, but the employee had not in fact engaged in that conduct. Put differently, § 230.80(8)(c) would be applicable, for example, if a supervisor believed that an employee had sent e-mail disclosures and retaliated against the employee on that basis, but the employee had not in fact sent any such e-mails at all.
*722 ¶ 56. Schigur essentially asks us to hold that although she is not protected by Wis. Stat. §§ 230.80-.89, the DOJ believed she was protected by §§ 230.80-.89, and she is therefore protected. The argument is illogical: an employer would not retaliate against an employee "because" the employer mistakenly believed that the employee would receive protection against retaliation. Wis. Stat. § 230.80(8). Instead, an employer might retaliate against an employee because the employer mistakenly believed that the employee had engaged in conduct that the employee had not in fact engaged in.
¶ 57. Because there is no dispute in this case that Schigur e-mailed Myszewski, Sperry, and O'Donnell[11] after attending the staff meeting led by Myszewski, and because there is no dispute about the content of the e-mails, Wis. Stat. § 230.80(8)(c) is not applicable here.
¶ 58. We conclude that Schigur's argument that the DOJ believed that she "disclosed information" rests on a misinterpretation of Wis. Stat. § 230.80(8)(c) and therefore fails.
V. CONCLUSION
¶ 59. We conclude that: (1) an opinion alone, as to the lawfulness or appropriateness of government activity is not "information" as that term is defined in Wis. Stat. § 230.80(5); (2) under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained "information" regarding the proposed security detail, the communication of the *723 information to Myszewski, Jed Sperry, and Cindy O'Donnell was not a "disclosure" under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails; and (3) Schigur's argument that the DOJ believed that she "disclosed information" rests on a misinterpretation of § 230.80(8)(c) and therefore fails. Accordingly, we affirm the decision of the court of appeals.
By the Court. — The decision of the court of appeals is affirmed.
¶ 60. DAVID T. PROSSER, J., and REBECCA G. BRADLEY, J., did not participate.
1 61.

 The Honorable Juan B. Colas presided.

 Ail subsequent references to the Wisconsin Statutes are to the 2011 — 12 version unless otherwise indicated.

 In the evaluation, Myszewski provides purported examples of this behavior. However, the issues involving the quality of Schigur's performance at the DOJ are not before this court. As will be explained, the Administrative Law Judge below concluded that Schigur's (putative) disclosure of information to Myszewski in her April 2008 e-mails was "a factor" in the DOJ's decision to terminate Schigur's probation and reinstate Schigur as Special Agent In-Charge.

 This requirement is subject to certain exceptions not applicable here. See Wis. Stat. § 230.81(1).

 The "office" is the office of state employment relations. Wis. Stat. § 230.03(10w). Schigur does not discuss how we are to know when a statute is "applicable to the office" of state employment relations. Wis. Stat. § 230.02. However, Wis. Stat. § 230.04(1) states that "[t]he director is charged with the effective administration of' Wis. Stat. ch. 230. § 230.04(1). The "director" is the director of the office of state employment relations. Wis. Stat. § 230.03(9e), (lOw). We therefore will assume without deciding that Wis. Stat. §§ 230.80-.89 are "[statutes applicable to the office" of state employment relations.

 Wisconsin Stat. § 230.01 contains other state policies, such as "correct[ing] pay inequities based on gender or race in the state civil service system" and "takfing] affirmative action which is not in conflict with other provisions of' Wis. Stat. ch. 230. Wis. Stat. § 230.01(2). Schigur does not claim that any of the other purposes affect our analysis and we do not address them.

 Schigur argued before the circuit court and the court of appeals below that the DOJ had forfeited this argument *713 because the DOJ did not raise the argument until it filed its motion for reconsideration of the ALJ's non-final decision regarding the DOJ's liability. It is unclear whether Schigur renews this argument before this court. We have stated in an analogous context that "[w]hen an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision, this court may exercise its discretion to address" an issue not raised until appeal. Apex Elec. Corp. v. Gee, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998) (party failed to raise issue in circuit court). All three prerequisites are met in this case with regard to the DOJ's argument that Schigur did not "disclose information." Therefore, assuming without deciding that the DOJ forfeited this argument, we will address the DOJ's argument.

 Schigur attempts to draw a distinction between her opinion and the opinion given by the plaintiff in Kinzel v. Board of Regents of the University of Wisconsin System, No. 2012AP1586, unpublished slip op. (Wis. Ct. App. Mar. 28, 2013). Schigur claims the opinion in Kinzel was merely a "statement of personal disapproval," not a belief that a law would be violated or that state resources would be misused. That may be so, but as it pertains to the issue before us, it is a distinction without a difference.

 Schigur claims that Kmetz v. State Historical Society, 304 F. Supp. 2d 1108 (W.D. Wis. 2004), rev'd in part on reconsideration sub nom. Kmetz v. Vogt, No. 03-C-107-C, 2004 WL 298102 (W.D. Wis. Feb. 11, 2004), "compels a ruling" in her favor on this issue. We do not agree with this contention. The court in Kmetz did not conclude that an opinion alone as to the lawfulness or appropriateness of certain government activity constituted "information" under the statute it was analyzing, Wis. Stat. § 895.65 (renumbered Wis. Stat. § 230.90; see 2005 Wis. Act 155, § 60). The court in that case was instead concerned with the meaning of the word "disclosure." See Kmetz, 304 F. Supp. 2d at 1141. The Kmetz court held that "[§ 895.65] does not protect employees that voice their opinions and offer criticism." Id. at 1115. Schigur again attempts to distinguish her opinion from the opinions given by the plaintiff in Kmetz, but the distinctions do not affect our conclusion.

 The DOJ chose not to address the merits of the argument in its brief, but we ordered briefing on the issues raised *721 in the petition for review. To rule that the parties had not "briefed the issue" simply because the DOJ declined to brief it when given the opportunity would be to give the DOJ control of whether or not this court reviews a forfeited issue.

 We do not decide whether Schigur complied with the procedural requirements of Wis. Stat. § 230.81(1) when she e-mailed Myszewski, Sperry, and O'Donnell simultaneously.