¶ 69.
SHIRLEY S. ABRAHAMSON, J.
(dissenting). The dispositive issue is whether the City of Madison is a "person" in the Wisconsin Fair Dealership Law. If it is not, the Law is not applicable to municipalities.[1]
¶ 70. This case is one of first impression. Neither the parties, the majority, nor I could find any reported case, either in Wisconsin or in any of the other many states with similar dealership statutes, holding that a *74 municipality is subject to the statute. I would affirm the judgment of the circuit court and the decision of the court of appeals, but on the ground that that the Fair Dealership Law does not apply to the City of Madison.
¶ 71. The majority opinion's ruling that the City of Madison is a "person" in the Law does not follow or provide clear interpretive rules[2] and has, I think, widespread ramifications for all municipalities in this state and the many contracts on diverse topics to which they are parties. Municipalities will be limited with regard to managing their finances and their contracts. The majority opinion has not considered these ramifications.[3]
f 72. The Wisconsin Fair Dealership Law, Wis. Stat. § 135.02(5) and (6), defines "grantor" under the Law as a "person" to whom the Law applies. It further defines "person" as a natural person, partnership, joint venture, corporation, or other entity. The legislature has not referenced "a municipality" or any governmental entity in the definition of "person" for purposes of the Dealership Law:
Wis. Stat. 135.02. Definitions. In this chapter [135]:
[[Image here]]
(5) "Grantor" means a person who grants a dealership.
(6)"Person" means a natural person, partnership, joint venture, corporation or other entity.
*75 ¶ 73. Although rules of interpretation serve the court, they are not absolute rulers of a court's interpretation. Boardman v. State, 203 Wis. 173, 233 N.W. 556 (1930) (quoting Benson v. Chicago, St. P., M. & O. Ry. Co., 77 N.W. 798, 799 (Minn. 1899)). Nevertheless, numerous interpretive rules point to the conclusion that a municipality does not fall within the definition of "person" under the Fair Dealership Law.
¶ 74. Applying these rules and looking to other factors, I conclude that the City of Madison does not fall within the definition of "person" in the Wisconsin Fair Dealership Law.
¶ 75. First, the Legislature's instructions to the court in deciding whether a statute governs a municipality make clear that the Fair Dealership Law should not be interpreted as applying to a city.
¶ 76. The legislature has clearly and explicitly stated that the powers conferred on cities "shall be limited only by express language." Wis. Stat. § 62.11(5).[4] Included among the powers conferred on a city is "the management and control of the city property." Wis. Stat. § 62.11(5).[5] The golf courses at issue are the property of the City of Madison.
¶ 77. In addition to the power to manage its property, the City of Madison is also statutorily autho *76 rized to own, operate, and finance parks and golf links. See Wis. Stat. § 66.0621(2). The City of Madison has adopted an ordinance creating a golf subcommittee of the Board of Park Commissioners. The subcommittee "[a]dvises the Commission regarding policies, rate structure, rules and regulations, capital improvements, user complaints, operations and the selection of golf pros." See Madison, Wis. General Ordinances § 33.05(5)(a).
¶ 78. The Fair Dealership Law does not contain any express language limiting a city's power to contract about the management and control of its golf links. No other law is cited as expressly limiting the City in the operation of its golf links.
¶ 79. In addition to these powers, the city council "shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public. . . ." Wis. Stat. § 62.11(5).
¶ 80. The legislature has mandated that a city's powers "shall be liberally construed in favor of the rights, powers and privileges of cities to promote the general welfare, peace, good order and prosperity of such cities and the inhabitants thereof." Wis. Stat. § 62.04.
¶ 81. According to these statutes, the City of Madison has the power — which is to be liberally interpreted — to manage its property, operate golf links, and to act for the good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public.
¶ 82. And the legislature has clearly and explicitly stated that the powers conferred on cities "shall be limited only by express language." Wis. Stat. § 62.11(5).
*77 ¶ 83. The majority opinion ought to follow the legislature's instructions in Wis. Stat. § 62.11(5): It ought to interpret the Dealership Law as not limiting the powers of the City of Madison because nothing in the Fair Dealership Law expressly limits the City of Madison in exercising management over its golf courses or expressly limits the City's power to act for the good order of the city, its commercial benefit, or for the health, safety, and welfare of the public with regard to its golf courses.
¶ 84. Applying the legislative instructions in § 62.11(5) to the instant case, I conclude that the City of Madison does not fall within the definition of the word "person" in the Fair Dealership Law.
f 85. Second, the interpretive rule denominated "statutes in derogation of sovereignty" supports the legislature's instructions that the powers conferred on cities "shall be limited only by express language." Under this interpretive rule, applicable to all subdivisions of government, any statutory provision that is susceptible to being read as applying to a governmental entity and to a private entity should be read as not applying to the governmental entity absent other in-dicia supporting a contrary result.[6] This rule is premised on the policy of preserving for the public the efficient functioning of government.[7]
¶ 86. This rule of statutory interpretation has been applied in Wisconsin cases. See, e.g., State ex rel. Martin v. Reis, 230 Wis. 683, 687, 284 N.W. 580 (1939) (When the legislative intent is to "include the state or any of its political subdivisions, it is explicitly so stated *78 in the definition. ... It is universally held both in this country and in England that such statutes do not apply to the state unless the state is explicitly included by appropriate language."); Sullivan v. School Dist. No. 1 of City of Tomah, 179 Wis. 502, 506-07, 509-10, 191 N.W. 1020 (1923) ("Legislation in derogation of the common law should be strictly construed most favorably to the public corporation and not to the claimant for damages. . . . [GJeneral statutes are not to be construed to include, to its hurt, the sovereign. . . . [Application of a statute to a political subdivision] is a matter which rests with the wisdom of the Legislature, and not with the courts, and until such change is effected by a proper statute, we must consider it our duty to adhere to our former decisions and to pronounce in favor of the nonliability doctrine.").
¶ 87. Applying this interpretive rule to the instant case, I conclude that the City of Madison does not fall within the definition of the word "person" in the Fair Dealership Law.
¶ 88. Third, in addition to the two interpretive rules described above supporting the conclusion that the City of Madison is not governed by the Fair Dealership Law, another similar rule of statutory interpretation "long followed"[8] and "generally applied"[9] in Wisconsin law validates the conclusion that the City of Madison does not fall within the definition of "person," namely the "presumption of inapplicability."
*79 ¶ 89. The court has adopted the "presumption of inapplicability" as an interpretive aid. Statutory provisions that do not explicitly govern governmental entities do not apply to governmental entities:
Statutory provisions which are written in such general language as to make them reasonably susceptible to being construed as applicable alike both to the government and to private parties are subject to a presumptive rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances.
Wis. Veterans Home v. Div. of Nursing Home Forfeiture Appeals, 104 Wis. 2d 106, 110, 310 N.W.2d 646 (Ct. App. 1981) (quoting 3 Sands, Statutes and Statutory Construction § 62.01, at 63 (4th ed. 1974)).[10]
¶ 90. Although Wisconsin cases rely on this "presumption of inapplicability," the cases acknowledge, as do I, that this presumption may be overcome.
¶ 91. The presumption may be overcome when (1) the statute's objective "could not be accomplished without including the government"; or (2) including a particular activity under the statute "would not vitally interfere with the processes of government."[11]
¶ 92. The Golf Pros have not overcome the presumption of the inapplicability of the Fair Dealership Law to the City of Madison. The objectives of the Law can be accomplished without including the City of *80 Madison as a "person" in the Law. Including the City as a "person" in the Law vitally interferes with the City's managing recreational facilities and the fiscal policies of the City.
¶ 93. Applying this "presumption of inapplicability" in the instant case, I conclude that the City of Madison does not fall within the definition of the word "person" in the Fair Dealership Law.
¶ 94. Fourth, the legislature has not defined "person" for the Fair Dealership Law. When the legislature wants the word "person" to mean a governmental body, it knows how to write such a definition. When the legislature wants to govern a governmental body, it has included one or more words in the enumeration of "person" conveying that meaning. Yet, the legislature did not refer to a governmental body in the definition of "person" in the Fair Dealership Law.
¶ 95. The legislature often defines words exclusively and distinctively for particular statutory enactments.[12] "[Slpecially-defined words or phrases are given their technical or special definitional meaning."[13]
*81 ¶ 96. For example, the Wisconsin antitrust law unequivocally defines "person" for purposes of that law to include "individuals, the state and all its political subdivisions, all counties, cities, villages, towns, school districts, governmental agencies and bodies politic and corporate, and all corporations.... " Wis. Stat. § 133.02(3).
¶ 97. The Fair Dealership Law unequivocally defines "person" for purposes of the Fair Dealership Law. Unlike in the antitrust act, the definition of the word "person" in the Fair Dealership Law does not refer to a "governmental agency," a "municipal corporation," a "body politic," a "municipality," a "county," a "city," a "town," a "school district," a "political subdivision," or similar words referring to a governmental body.
¶ 98. In Wis. Stat. § 990.01(26), the legislature defines "person" as including "all partnerships, associations and bodies politic or corporate." This definition applies to the interpretation of Wisconsin laws "unless such construction would produce a result inconsistent with the manifest intent of the legislature." The legislature has manifested its intent that this definition of "person" in § 990.01(26) does not apply in the instant case; the legislative special definition of "person" in the Fair Dealership Law is inconsistent with the definition of "person" in § 990.01(26). The special definition of "person" in the Fair Dealership Law controls. It does not reference "body politic."
¶ 99. This court has stated numerous times that the plain meaning of the statutory text is the control-Uiaginterpretive rule in this court. This court assumes that the legislature says what it means and means what it says. Heritage Farms, Inc. v. Markel Ins. Co., 2009 WI 27, ¶ 14 n.9, 316 Wis. 2d 47, 762 N.W.2d 652 (stating that "courts must presume that a legislature *82 says in a statute what it means and means in a statute what it says there;" "every word excluded from a statute must be presumed to have been excluded for a purpose") (citations omitted); Umansky v. ABC Ins. Co., 2009 WI 82, ¶ 102, 319 Wis. 2d 622, 769 N.W.2d 1 (Ziegler, J., dissenting) (same); See also Ball v. Dist. No. 4, Area Bd. of Vocational, Technical & Adult Educ., 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984) ("The . . . presumption is that the legislature chose its terms carefully and precisely to express its meaning.").
¶ 100. Applying this interpretive rule in the instant case, I conclude that the City of Madison does not fall within the definition of the word "person" in the Dealership Law.
¶ 101. Fifth, the City is not a "corporation" in the definition of "person" under the Fair Dealership Law. The word "corporation" is not defined in the Fair Dealership Law.
¶ 102. The majority opinion proffers four cases to support its conclusion that the City of Madison is a "corporation" under the definition of "person" in the Wisconsin Fair Dealership Law. None of the cases interprets the words "person" or "corporation" in the context of the Fair Dealership Law.
¶ 103. Three of the four cases are not Wisconsin cases. Each of these non-Wisconsin cases involved a different federal or state statute, and in no statute did the statutory definition of "corporation" include a local political subdivision. None of these non-Wisconsin cases defines "person" as "person" is defined in the Wisconsin Fair Dealership Law.
¶ 104. In each of these three cases the court examined the definition of the word "corporation," the context of the definition, the purpose of the statute, and the operation of the statute. See City of Lincoln v. *83 Ricketts, 297 U.S. 373 (1936); Hoye v. United States, 277 F.2d 116 (9th Cir. 1960); Madison Cty. Fiscal Court v. Kentucky Labor Cabinet, 352 S.W.3d 572 (Ky. 2011). In each case the court concluded that the legislature intended the word "corporation" to include the political subdivision at issue.
¶ 105. That said, these cases neither support the majority opinion's view that the word "corporation" in the Fair Dealership Law includes the City of Madison nor undercut my conclusion that the word "corporation" does not include the City of Madison. Rather, these three non-Wisconsin cases stand for the unremarkable proposition that in some instances, legislation included a governmental entity within the word "corporation."
¶ 106. The majority opinion seems to champion the notion that every time the word "corporation" is used in a statute it refers to a municipal corporation. If this is the majority opinion's claim, it is wrong. If, however, the majority opinion claims that in some statutes the word "corporation" may be interpreted to include a municipal corporation, this claim is supported by the three non-Wisconsin cases.
¶ 107. Indisputably, the City of Madison is sometimes referred to as a municipal corporation. But the question in the instant case is whether a municipal corporation is a "corporation" within the meaning of the word "corporation" in a particular statute.
¶ 108. The particular statute in the instant case is the Fair Dealership Law, and the question presented is: Does the word "corporation" in the definition of "person" in the Law include a municipal corporation?
¶ 109. The fourth case that the majority opinion relies on, City of Madison v. Hyland, Hall & Co., 73 Wis. 2d 364, 243 N.W.2d 422 (1976), relates to yet a *84 different statute, the Wisconsin antitrust act. In its discussion of Hyland, Hall & Co., the majority opinion continues what appears to be a misguided attempt to demonstrate that municipal corporations fall within the word "corporation" every time a statute uses the word "corporation."
¶ 110. In Hyland, Hall & Co., the City of Madison (in its capacity as a City and school district) sued a private corporation under the Wisconsin antitrust act for damages for fixing bids on plumbing contracts. At the time, Wis. Stat. § 133.01 provided that "any. . . person, corporation, copartnership, trustee or association" shall be liable "to any person transacting or doing business in this state" for treble damages for violating the Act. Section 133.04 of the act stated that the word "person" "shall be deemed to include, besides individuals, corporations, partnerships and associations existing under or authorized by the laws of the United States, any of the territories, of this or any other state or any other state . . . ."
¶ 111. The defendants in Hyland, Hall & Co. argued that the City of Madison was not a person within the definition of Wis. Stat. § 133.04 and was not entitled to seek treble damages under the antitrust act. The court rebuffed the defendant's position on several grounds.
¶ 112. Quoting Wis. Stat. § 66.019, the court noted that the city is "a body corporate and politic, with powers and privileges of a municipal corporation at common law and conferred by these statutes." The court then read Wis. Stat. §§ 133.04 and 990.01(26) together and concluded that the City was a person (that is, a corporation existing under Wisconsin law) that could be a plaintiff in an antitrust suit. At the time Hyland, Hall & Co. was decided, § 990.01 stated *85 that " 'person' includes all partnerships, associations and bodies politic and corporate." The court's brief discussion of why these two provisions were to be read together is, in my opinion, garbled and hard to understand.
¶ 113. Perhaps that is why the Hyland, Hall & Co. decision did not rely on this reasoning alone. The court went on to explain in Hyland, Hall & Co. that the interpretation of the Wisconsin antitrust act was governed by the interpretation of the federal Sherman Act. Under the Sherman Act, the civil remedy of treble damages had been afforded to a municipality. Hyland, Hall & Co., 73 Wis. 2d at 375. Thus, the court interpreted the Wisconsin statute as affording the City a civil remedy of treble damages.
¶ 114. The Hyland, Hall & Co. court did not, however, decide whether the City would be subject to a treble-damage judgment if it were a defendant (rather than a plaintiff) in an antitrust case. The court explicitly acknowledged that the words "person" and "corporation" in the antitrust act might have different meanings depending on whether the City was a plaintiff or defendant in an antitrust suit. Hyland, Hall & Co., 73 Wis. 2d at 375.[14] According to the court, "the right to sue for treble damages and liability to suit are not necessarily reciprocal." Hyland, Hall & Co., 73 Wis. 2d at 376.
*86 ¶ 115. Hyland, Hall & Co. is not on all fours and does not govern the instant case. Hyland, Hall & Co. involves a different statute and different definitions than those in the instant case, and the antitrust Act and the Fair Dealership Law serve different purposes. Hy-land, Hall & Co. stands for the unremarkable, well-accepted proposition that the words "person" and "corporation" can have different meanings in different statutes.
¶ 116. The persuasiveness of the four cases the majority opinion cites is significantly undermined by the general rule that the legislature can ascribe different meanings to the same word in different statutes (and sometimes even in the same statute).
¶ 117. I conclude that the City of Madison does not fall within the definition of the word "corporation" in the definition of "person" in the Fair Dealership Law.
¶ 118. Sixth, the City does not fall within the phrase "other entity" in the definition of "person" under the Dealership Law. The phrase "other entity" can signify a wide variety of entities. There is no legislative history supporting the conclusion that "other entities" in the Fair Dealership Law refers to municipal corporations.
¶ 119. The ejusdem generis canon of interpretation, a variation of the maxim noscitur a sociis, is helpful in interpreting the phrase "other entity" in the instant case.[15]
¶ 120. Ejusdem generis applies when general words (for example, "other entity" in the instant case) follow specific words enumerated in a statutory list.[16]
*87 ¶ 121. The canon advises that the general words "other entities" are interpreted to embrace only bodies similar in nature to those enumerated by the preceding specific words. The entities enumerated in Wis. Stat. § 135.02(6) are set forth in terms of entities conducting business or commerce.
¶ 122. The Golf Pros in effect assert that inasmuch as the entities enumerated as "persons" conduct business and commerce, the City of Madison can and should be bound by the Fair Dealership Law when it engages in business and commerce as a de facto private enterprise. The Golf Pros argue that the City should be held to the same standard as any private golf course operation under the Fair Dealership Law.
¶ 123. But a municipality, in contrast to a private entity, does not engage in business or commerce for the purpose of profit or revenue. A municipality's power is limited to engaging in activities in furtherance of its powers and in furtherance of the public interest. In the instant case, the City has the express power to operate golf links. Although the City of Madison operates golf links that might have belonged to and been operated by a private entity, the City is not necessarily treated under the law in the same way as a private enterprise operating golf links.[17]
¶ 124. Applying the interpretive canon of ejus-dem generis in the instant case, I conclude that the *88 City of Madison does not fall within the definition of "other entity" and does not fall within the definition of the word "person" in the Dealership Law.
¶ 125. Seventh, the majority opinion errs in relying on Wis. Stat. § 135.07 and the canon expressio unius est exclusio alterius (the expression of one thing excludes another) to conclude that the City of Madison falls within the definition of "person" within the Fair Dealership Law.[18] See majority op., ¶ 32.
f 126. In Wis. Stat. § 135.07, the legislature excluded three specified entities from the application of the Fair Dealership Law. This statute provides as follows:
135.07 Nonapplicability. This chapter does not apply:
(1) To a dealership to which a motor vehicle dealer or motor vehicle distributor or wholesaler as defined in s. 218.0101 is a party in such capacity.
(2) To the insurance business.
(3) Where goods or services are marketed by a dealership on a door to door basis.
f 127. The majority opinion asserts that when the legislature expressly excludes something from a statute it does not intend to exclude anything else.[19] Majority op., f 32. Thus, asserts the majority opinion, *89 because Wis. Stat. § 135.07 creates only three exceptions to the Fair Dealership Law, the legislature intended no other exceptions. Applying the canon to § 135.07, the majority opinion concludes that because the City is not excepted as one of the three statutory exceptions, the City is not excepted from the Fair Dealership Law.[20]
¶ 128. A canon may be overcome by a strong indication of contrary legislative intent. And a contrary legislative intent is strong in the instant case.
¶ 129. The three excepted entities clearly fall within the statutory definition of "person" to which the Fair Dealership Law is applicable: a motor vehicle dealership, the insurance business, and door-to-door dealerships. This section excludes three "persons" to which the Fair Dealership Law would otherwise apply. Section 135.07 does not exclude these three entities from the definition of "persons."
¶ 130. In contrast, the City of Madison does not fall within the statutory definition of "person" to which the Fair Dealership Law is applicable. Therefore the legislature did not have to exclude the City of Madison from the application of the Fair Dealership Law in Wis. Stat. § 135.07.
f 131. Accordingly, applying the text of Wis. Stat. § 135.07 and the canon, I conclude that the City of Madison does not fall within the definition of "person" under the Fair Dealership Law.
¶ 132. Eighth, the legislative declaration that the Fair Dealership Law be "liberally construed and applied to promote its underlying remedial purposes *90 and policies," Wis. Stat. § 135.025(1), does not mean that the boundaries of coverage of the Law are to be construed extensively.[21] Moreover, the court places heavy emphasis on the right of free contract, declaring that "the right of free contract is a property right protected by both state and federal constitutions and should not be lightly impaired." Kania v. Airborne Freight Corp., 99 Wis. 2d 746, 774-75, 300 N.W.2d 63 (1981).
f 133. Ninth and finally. No case has been cited, and I could not find any, applying a dealership statute to a governmental entity.
¶ 134. More than 20 states apparently have statutes similar to the Wisconsin Fair Dealership Law. Gary W. Leydig, Survey of State Dealer Laws at 3 n.ll, http://www.leydiglaw.com/userfiles/file/survey %20of%20state%20dealer%201aws.pdf. According to Leydig's survey, the Wisconsin Fair Dealership Law, enacted in 1973, is "one of the oldest and most litigated dealership statutes on the books." The Wisconsin Fair Dealership Law has served as a reference for other states in interpreting and applying their own statutes. See Leydig, Survey of State Dealer Laws at 5.
¶ 135. Using WestLaw, I searched cases in many states and I could find no reported cases in these jurisdictions that apply the dealership statutes to a contract between a governmental entity and a private *91 entity. This lack of any cases is persuasive that the dealership statutes are not applicable to political subdivisions.
* * * *
¶ 136. The majority opinion forsakes the usual rules of statutory interpretation in deciphering the meaning of the word "person" in the Wisconsin Fair Dealership Law. Its analysis neglects to address the relationship of the Dealership Law, municipal constitutional and statutory home rule, and other statutes governing governmental entities. Its weak analysis inevitably leads the majority opinion to the wrong conclusion. And I am concerned, as I stated previously, that the majority opinion has not considered the consequences of its interpretation of the word "person" and that it is establishing a far-reaching precedent that will produce unreasonable results.[22]
¶ 137. For the reasons I have set forth, I write in dissent. I conclude that the City of Madison does not fall within the definition of "person" for the purposes of Wis. Stat. chapter 135.
f 138. Accordingly, I would affirm the judgment of the circuit court and the decision of the court of appeals but on the ground that the Fair Dealership Law does not apply to the City of Madison.
¶ 139. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 I therefore need not and do not address the stretch the majority opinion makes to fit the instant case into the Wisconsin Fair Dealership Law.
The word "dealership" is used instead of "franchise" in the Wisconsin Fair Dealership Law to avoid confusion between the Dealership Law and the Wisconsin Franchise Investment Law, Wis. Stat. ch. 553. Foerster, Inc. v. Atlas Metal Parts Co., 105 Wis. 2d 17, 23-24, 313 N.W.2d 60 (1981). For an historical recount of the circumstances leading up to the enactment of the Fair Dealership Law, see Robert B. Corris, In the Trenches: OPEC, Gas Lines, and the Wisconsin Fair Dealership Law, Wis. Lawyer, Apr. 1999, at 25.
The word "franchise" also has a special meaning in municipal law. See 12 Eugene McQuillin, The Law of Municipal Corporations ch. 34 (3d ed. 1995). The word franchise is often used in municipal law to refer to a municipality entering into an agreement with a utility company enabling the utility to use property owned by the municipality.

 See majority op., ¶ 30 (The legislature should " 'be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts.'") (quoted source omitted).

 Consequences are an important consideration in interpreting a statute. If an interpretation results in "unreasonable or absurd" consequences, that interpretation may be rejected. Wisconsin Carry, Inc. v. City of Madison, 2017 WI 19, ¶ 20, 373 Wis. 2d 543, 892 N.W.2d 233 (2017).

 See Wis. Stat. § 61.34(1) for the same provision relating to village powers.

 The court has stated that "[t]he City of Madison possesses the broad home rule powers outlined by Wis. Stat. § 62.11(5) and Article XI, Section 3 of the Wisconsin Constitution. This power allows the City to act for the 'health, safety, and welfare of the public,' and to carry out its policy goals by 'license, regulation, suppression.. . and other necessary or convenient means.'" Eichenseer v. Madison-Dane County Tavern League, Inc., 2008 WI 38, ¶ 49, 308 Wis. 2d 684, 748 N.W.2d 154.

 3 Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 62.1, at 377 — 82 (7th ed. 2014).

 3 Singer, supra note 6, § 62.1, at 377-82.

 Wis. Veterans Home v. Div. of Nursing Home Forfeiture Appeals, 104 Wis. 2d 106, 110, 310 N.W.2d 646 (Ct. App. 1981).

 DNR v. City of Waukesha, 184 Wis. 2d 178, 194, 515 N.W.2d 888 (1994), abrogated on other grounds by State ex rel. Auchinleck v. Town of LaGrange, 200 Wis. 2d 585, 547 N.W.2d 587 (1996).

 For a nearly identical statement in a more recent version of Sands, see 3 Singer, supra note 6, § 62.1, at 377-78.

 Town of Janesville v. Rock Cty., 153 Wis. 2d 538, 542-44, 451 N.W.2d 436 (Ct. App. 1989); DNR v. City of Waukesha, 184 Wis. 2d 178, 194-95, 515 N.W.2d 888 (1994), overruled in part by State ex rel. Auchinleck v. Town of Grange, 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996).

 See, e.g., State v. Neumann, 2013 WI 58, ¶ 73, 348 Wis. 2d 455, 832 N.W.2d 560 ("The word 'recklessly' is defined differently in the second-degree reckless homicide statute (Wis. Stat. § 939.24(1)) and in the criminal child abuse statute § 948.03(1)), resulting in requiring different mens rea.").

 DOJ v. DWD, 2015 WI 114, ¶ 22, 365 Wis. 2d 694, 875 N.W.2d 545 (citation omitted). See also Bruno v. Milwaukee Cty., 2003 WI 28, ¶ 8, 260 Wis. 2d 633, 660 N.W.2d 656 ("We have 'long recognized that when a court construes an ordinance or statute, words must be given their common meaning.' It is also 'well established that technical words or phrases with a peculiar meaning in the law must be construed according to such meaning.'") (quoted sources omitted).

 "'Most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section.'... A given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies. The point is the same even when the terms share a common statutory definition... ." Envtl. Defense v. Duke Energy Corp., 549 U.S. 561, 574 (2007).

 2ASinger, supra note 6, § 47:17, at 364-65. The majority opinion refers to "noscitur a sociis."

 2A Singer, supra note 6, § 47:17 at 364-65.
*87 For further discussion of the ejusdem generis canon, see La Barge v. State, 74 Wis. 2d 327, 332-34, 246 N.W.2d 794 (1976).
The doctrine of ejusdem generis is inapplicable if the text has a clear, plain and reasonable meaning on its face. State v. Peters, 2003 WI 88, ¶ 14, 263 Wis. 2d 475, 665 N.W.2d 171.

 See Wisconsin Carry, Inc. v. City of Madison, 2017 WI 19, 373 Wis. 2d 543, 892 N.W.2d 233 (2017) (a city operating a bus enterprise is not treated the same as a private enterprise operating a bus service).

 The Golf Pros cite Caflisch v. Staum, 2000 WI App 113, ¶ 13, 235 Wis. 2d 210, 612 N.W.2d 385, for the expression of the expressio unius est exclusio alterius canon: "When the legislature provides a finite list of exceptions to a general rule, [courts] presume that the legislature did not intend other exceptions."

 See 2A Singer, supra note 6, § 47:23, at 406-13.

 See Foster v. State, 70 Wis. 2d 12, 20, 233 N.W.2d 411 (1975) (this "statute stops with the single exception it creates").

 This court has given a narrow interpretation of the legislature's instruction to give a statute a "liberal interpretation construction." See, e.g., DOJ v. DWD, 2015 WI 114, ¶¶ 30-34, 365 Wis. 2d 694, 875 N.W.2d 545.
The Fair Dealership Law's liberal construction rule does not apply to whether the Law applies to a particular contract in the first instance. See H. Phillips Co., Inc. v. Brown-Forman Distillers Corp., 483 F. Supp. 1289, 1291 (W.D. Wis. 1980).

 See Anderson v. Aul, 2015 WI 19, ¶ 114, 361 Wis. 2d 63, 862 N.W.2d 304 (Ziegler, J., concurring) (asserting that the plain meaning analysis includes consideration of consequences of alternative interpretations to avoid unreasonable results).